CHARLES N. SMART *vs.* BOSTON WIRE STITCHER Co. *et al.*

JANUARY 3, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows and Murdock, JJ.

Murdock, J. This is an appeal from a decree of the Superior Court granting a temporary injunction giving mandatory relief.

The essential facts as appear from the record are: The respondent Boston Wire Stitcher Co. is a corporation engaged in the business of manufacturing various types of paper fasteners. The complainant is engaged in the business of selling specialties. March 1, 1923, the complainant and respondent corporation entered into a contract which provided for the sale and delivery to the complainant of a paper fastener manufactured by the respondent corpora-

tion known as Bostitch Stapler No. 1, a patented article, and the staples therefor. The contract, while it designates the complainant as sole selling agent for said article throughout the entire business world, provides that the relation of principal and agent shall not exist between the parties but that the complainant shall purchase said stapler and staples therefor and sell the same at his own risk and for his own account. The complainant is under no obligation to purchase any definite number of staplers and staples but the respondent corporation guaranteed that it was equipped to manufacture 50,000 of said staplers a year and that it would increase its capacity to 100,000. The price agreed upon for the stapler was $1.20 and the staples therefor 12¢ per thousand. Five thousand staples and one stapler constituted a unit and the price agreed upon for such unit was $1.80. No limitation was placed upon the price at which the complainant could sell to his distributors but it was agreed that the retail price of the stapler and 5,000 staples east of the Mississippi River should be $5.75 for the complete unit and the retail price west of the Mississippi River should be $5.75 plus carriage charges. The respondent corporation agreed to refer all inquiries for said stapler, parts and staples to the complainant in order that he might have exclusive control of the introduction, sale and marketing thereof. The right was reserved to the respondent corporation to sell to the American Type Founders Co. said stapler and staples, the respondent corporation accounting to the complainant for any difference between the price for which said articles were sold and the price for which the same would have been sold to the complainant. The complainant agreed "to use his best endeavors to introduce and sell said machine, parts thereof and staples therefor, through said territory, to carry a sufficient number of machines, parts thereof and staples therefor to properly exhibit and demonstrate through his various salesmen and agencies." The complainant further agreed not to manufacture or to take the selling agency, directly or indirectly, for any other type

of stapling machine than that manufactured and sold by the respondent corporation. While the complainant did not obligate himself to purchase any definite number of staplers, it was provided that, if, in any six months' period beginning October 1, 1923, he failed to purchase 12,500 stapling machines and 62,500 staples, the respondent corporation would have the option either to sell the stapler, parts and staples to other parties or to terminate the contract. The contract is indefinite in its duration but, in case the company decides to discontinue the manufacture of the stapler, it may terminate the contract on giving the complainant one year's notice in writing. In that event it obligated itself to sell to the complainant the letters patent covering the stapler, the machinery, tools and equipment relating thereto, at the lowest price at which it would be willing to sell. In 1923 the price of staples was reduced from 12¢ to 10¢ per thousand. In 1927 a further reduction in price of staples to 8½¢ was made and the price of units was reduced from $1.80 to $1.70. These reductions in price were made at the solicitation of the complainant and furnish the principal grounds for the contention of the respondent corporation that the contract was breached by the complainant. The respondent corporation manufactures other fastening devices, some of which are not yet fully perfected. The complainant contends that an oral agreement was entered into whereby he should have the right to sell these other machines under the same conditions as the Bostitch Stapler No. 1. The contract has been profitable to both parties but in a greater degree to the complainant. Some time in 1928 negotiations were entered into for the sale to the respondent corporation of the complainant's business. Numerous conferences ensued and an investigation of the complainant's business was undertaken at the instance of the respondent corporation by the Barrington Associates, a concern engaged in the business of analyzing sales methods. May 6, 1929, at a conference between the complainant and one of the respondents, Mr. Whalen, treasurer and manager

of the respondent corporation, Whalen delivered to the complainant three letters. One was an offer to purchase the business of the complainant on terms, which have been referred to by complainant's counsel as ridiculous; another was a notice to the effect that after the seventh day of May the sale of all machines and staples therefor manufactured by the respondent corporation except the Bostitch Stapler No. 1 would be discontinued; the third letter, after calling to the attention of the complainant certain alleged breaches of the contract on his part, informed him under the twelfth paragraph of the contract it would discontinue shipping or delivering the Bostitch Stapler No. 1 or parts thereof and that, unless the breaches and defaults were cured within sixty days, the contract between the parties would be rescinded as provided in said twelfth paragraph. June 13, 1929, an agreement referred to as "tentative agreement" was entered into between the parties. A binding agreement was not concluded and on July 8 respondent corporation notified complainant that the contract was rescinded. Two days later the respondent corporation notified the complainant that it would ship the Bostitch Stapler No. 1 and staples therefor at the price of 10¢ per thousand and $1.80 for units, but the complainant declined to purchase on these terms. Negotiations, however, looking to a settlement continued but on July 17, respondent corporation notified the complainant that none of his propositions of settlement was satisfactory. Thereupon complainant filed this bill in equity in the Superior Court.

The bill sets forth substantially the facts as above enumerated, avers a complete performance of the terms of the contract on the part of the complainant and charges in effect a conspiracy on the part of respondents to disrupt complainant's business and obtain the same for a nominal sum.

The case was heard in August, during the summer vacation, on the complainant's motion for a preliminary injunction. The complainant rested on his bill, which was

duly sworn to, and an affidavit in support thereof. The respondent corporation put in its case at length and urged upon the court (1) that the contract was in violation of the antitrust laws of the United States, in that it provided for a fixing of retail price and therefore was unenforceable in equity, (2) that the complainant had been guilty of various breaches of the contract, and (3) that the contract was unenforceable in equity. The trial justice held that the balance of convenience rested with the complainant and that the parties should be held *in statu quo* until the case could be heard on its merits, and accordingly entered a decree which, while negative in form, is in substance a decree ordering specific performance of the contract *pendente lite*. From this decree the respondents have appealed and have here argued several grounds for reversal which may be, for the purposes of the present consideration of the case, reduced to three: first, that the contract upon which the bill is based is unlawful in that it contains a price-fixing clause which is contrary to the antitrust law of the United States, commonly referred to as the Sherman Act; second, that the complainant has been guilty of various breaches of the contract so that the respondent corporation is entitled to rescind the same; third, that the contract is not enforceable in equity by reason of lack of mutuality as to remedy.

In the court below the first two grounds were relied on mainly and the trial justice rightly held that the questions raised as to the validity of the contract and as to the alleged breaches of the same were of such gravity and difficulty that they could only be dealt with adequately after final hearing and granted the complainant's prayer for an injunction restraining the respondent corporation from refusing to carry out the terms of the contract.

We have repeatedly held that the issuance of a preliminary injunction in cases where the injunctive order compels inaction on the part of the respondent rests largely in the discretion of the trial justice and will not be disturbed unless it appears that there was an abuse of discretion or

that the injunction was improvidently issued. *American Electrical Works* v. *Varley Duplex Magnet Co.,* 26 R. I. 440; *Armour* v. *Hall,* 38 R. I. 300; *Rhodes Bros. Co.* v. *Musicians Protective Union,* 37 R. I. 281; *Fritz* v. *Presbrey,* 44 R. I. 207.

When an injunction mandatory in its nature is asked for, a stricter rule obtains. Owing to the extraordinary character of the remedy it should be granted on preliminary application only in cases of great urgency and when the right of the complainant is very clear. 22 Cyc. 743. The court below considered the motion for a preliminary injunction as though it were an application for the ordinary injunctive relief and declined to consider the very weighty objections of the respondents to the exercise of this extraordinary remedial process on a preliminary hearing. A restraining order had been issued prior to the hearing on the motion for preliminary injunction which, taken as a whole was free from mandatory features and which gave the complainant all the relief to which he was entitled until the final hearing. If the court below was of the opinion that the complainant was entitled to relief on his motion for a preliminary injunction, the decree should not have gone beyond the terms of the restraining order. The decision of the court below, deferring until final hearing consideration of the question of illegality of the contract and the breaches of the same by the complainant, will not be reviewed at this time; but the question of mutuality goes to the equity of the bill, and if there is lack of mutuality of remedy the bill must fail and the principle of the balance of convenience does not apply. *Fritz* v. *Presbrey, supra; Rhodes Bros. Co.* v. *Musicians Protective Union, supra.* It is the duty of the court when the equity of the bill is questioned, even on appeal from a preliminary injunction, to determine that question so that if there be lack of equity the complainant may not be left to pursue a remedy which he must ultimately be denied. Chief Justice TAFT, in *North Carolina R. R. Co.* v. *Story,* 268 U. S. 288, said: "By the ordinary

practice in equity as administered in England and this country an appellate court has the power on appeal from a temporary or interlocutory order or decree to examine the merits of the case if sufficiently shown by the pleadings and the record and, upon deciding them in favor of the defendant, to dismiss the bill and save both parties the needless expense of further prosecution of the suit."

Under the earlier doctrine of specific performance the complainant clearly could not prevail. Fry on Specific Performance (3rd ed.), p. 214, states the rule as follows: "A contract to be specifically enforced by the court must be mutual,—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity to contract, or the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former." Dean Ames, in challenging the soundness of this rule, points out that it was subject to at least eight exceptions and raises the question as to whether a rule so overloaded with exceptions is not open to severe criticism. Columbia Law Review, Vol. 3, p. 1. The trend of the modern cases is to compel the specific performance of contracts where such relief is practicable and appropriate when by its decree it can insure to the party against whom the decree operates all that he is entitled to under the terms of the contract. This may be accomplished by making the performance of the contract by the respondent conditional upon the performance by the complainant of all that the contract. requires of him. *Great Lakes & St. Lawrence Transportation Co.* v. *Scranton Coal Co.*, 239 Fed. 603. The criticism of the earlier rule would seem to be sound and the modern doctrine more in accord with the principles upon which the jurisdiction of a court of equity rests. But

giving due weight to the modern doctrine, we are of the opinion that it is not applicable to the instant case. The remedy of specific performance is not a right of complainant but rests in the sound discretion of the court guided by the principles of equity. *Ball* v. *Milliken*, 31 R. I. 36. "The granting this equitable remedy is a matter of discretion; not, indeed, of an arbitrary, capricious discretion, synonymous with the mere pleasure of the judge; but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case." Pomeroy, Specific Performance of Contracts, 3rd ed., § 35. The decree appealed from while negative in form is tantamount to a decree compelling specific performance of the contract and is subject to the same rules as a decree compelling specific performance. Pomeroy Equity Jurisprudence, § 1341; Williston on Contracts, Vol. 3 (ed. 1920), § 1445. Equity will not enforce by decree of specific performance a contract calling for personal services. Pomeroy, Specific Performance of Contracts, § 310. The complainant contends that, as the decree of the court below is made conditional on the performance on the part of the complainant of all of his promises the requirements of mutuality of remedy are fully met. The doctrine of the conditional decree is based on the proposition that the respondent will be freed from the operation of the decree when the complainant fails to perform on his part as it would be clearly inequitable to compel the respondent to perform unless assured of performance on the part of complainant.

What obligations has the complainant undertaken failure to perform which will release the respondent corporation from the order to perform on its part? The complainant agrees " . . . to use his best endeavors to introduce and sell said machine, parts thereof and staples therefor, through said territory, to carry a sufficient number of machines, parts thereof and staples therefor to properly exhibit and demonstrate through his various salesmen and

agencies." It is true that both parties contemplated that sales would result from the efforts of complainant and that such sales would exceed the minimum named in the contract but to what extent it is not possible for the court to say for the reason that it has no standard for measuring the complainant's best endeavors. The element of personal service involving skill and cultivated judgment enters so largely into the complainant's obligation under the contract as to make this contract fall into that class of cases which equity has always declined to enforce. " . . . the proper performance of the services to the best of defendant's ability is uncertain and difficult to gauge and any attempt to overcome these difficulties might involve too serious an infringement of personal liberty to be tolerable; therefore such promises are not enforceable by affirmative decree." Williston on Contracts, Vol. 3 (ed. 1920), § 1423.

It is further urged in behalf of the complainant that the contract contemplated that by the exercise of his best endeavors the complainant would increase the amount he could sell and thus impliedly agreed to sell more than the amount named in the contract. This amount, it is suggested, could be ascertained from an examination of his books and therefore a decree ordering the complainant to purchase a definite number of machines each year could be specifically enforced against him. The answer to this contention is that it would in effect be making a new contract. A court of equity will not read into a contract conditions which do not appear in the contract itself so as to make the contract enforceable by affirmative decree. Moreover, the respondent corporation would doubtless contend, as it did at the hearing, that the complainant has not put forth his best efforts and therefore the volume of his past sales furnishes no criterion.

The devices manufactured by the respondent corporation demand great precision and constant and close supervision in their production. Imperfections in those sold to the complainant have been the cause of complaint on his part

in the past. It is fair to assume that difficulties of this character will arise in the future and the court may be called upon to pass upon these delicate and intricate processes of manufacture to determine whether or not its decree is being violated. On the other hand, the respondent corporation would doubtless apply to the court for release from the injunction on the ground that the complainant was not putting forth his best efforts to sell its products. We are therefore of the opinion that a contract such as this, extending over an indefinite period, involving personal service and calling for the constant supervision on the part of the court, is not enforceable in a court of equity. *Taussig* v. *Corbin*, 142 Fed. 660; *William Rogers Co.* v. *Rogers*, 58 Conn. 356; *Bartholomae & Roesing Brewing and Malting Co.* v. *Modzelewski*, 269 Ill. 539; *Schubert* v. *Woodward*, 167 Fed. 47; *Berliner Gramaphone Co.* v. *Seaman*, 110 Fed. 30; *Javierre* v. *Central Altagracia*, 217 U. S. 502; *Marble Co.* v. *Ripley*, 10 Wall. 339; *Universal Rim Co.* v. *General Motors Corporation*, 20 Fed. (2d) 966; *Engemoen* v. *Rea*, 26 Fed. (2d) 576; *Manchester Dairy System* v. *Hayward*, 132 Atl. (N. H.) 12.

The appeal is sustained, the decree appealed from reversed and the cause remanded to the Superior Court for further proceedings.

*Hinckley, Allen, Tillinghast & Phillips, Arthur M. Allen, Frederick W. Tillinghast, Edward W. Lincoln, W. Harold Hoffman, Mason B. Merchant*, for complainant.

*Wilson, Churchill & Curtis, Tillinghast & Collins, Alexander L. Churchill, James C. Collins*, for respondents.