267 A.2d 725.

ROBERT SMITH *vs.* PASCO DeFUSCO.

JULY 17, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this civil action for the alleged conversion of a house trailer and 91 other items of personal property, a justice of the Superior Court sitting without a jury found for the plaintiff, and a judgment was entered in his favor for $2,789.50 plus interest computed to the date of the taking. The defendant appealed.

In his bench decision the trial justice reviewed the evidence in some detail and resolved the many conflicts in the testimony. His findings provide a frame of reference for the legal issues raised by the appeal.

Defendant owned a farm in the town of Coventry which he had acquired in 1957, and situated thereon were a farm-

house and an adjacent L-shaped barn. In 1959 the farm-house was leased to a family named Babcock, and in the spring of 1960 the barn was leased to plaintiff. The plaintiff used the barn as a storage place for an extensive collection of tack, antiques and miscellany which he had accumulated over a period of many years. Other items answering to the same general description were stored in a bus which had been converted into a house trailer and which plaintiff parked on the farm premises.

In October of 1960 plaintiff, who throughout the summer and early fall of that year had visited the barn almost daily, became ill, and his visits ceased not to be resumed until June of the following year. Plaintiff continued to use the barn for storage purposes, however, and the monthly rent continued to accrue. In January of 1961 defendant called at his home for the purpose of collecting the then overdue November, December and January rent. Even though he collected nothing, plaintiff's assurances that the rent account would eventually be made current apparently either satisfied defendant, or at least reconciled him to plaintiff's continuing his occupancy until springtime when the barn, inaccessible because of road conditions during the winter and early spring, might again be put on the rental market.

Now we come to the month of June 1961. In the early afternoon of the 10th of that month plaintiff returned to the farm for the first time since October. He discovered that the bus and the 91 other items had disappeared, and that the remainder of his property was in the process of being removed from the barn and loaded onto a flatbed truck by defendant's son and one of his employees. The plaintiff asked them to stop, but they refused. He then called the state police, who upon arrival also requested defendant's men to unload the truck and return the goods to the barn. When the request was ignored, the crew were

taken into custody. Concededly, the goods then on the truck were nothing but "junk" and included none of the 91 items.

Defendant admitted that he towed the bus away and explained it by saying that it constituted a menace to children in the area. He denied responsibility, however, for the disappearance of the 91 other items, and he now challenges the trial justice's finding that he converted those items as lacking the support either of any direct credible evidence or of any worthwhile circumstantial evidence. In effect he argues that the record, whatever it may disclose about other goods, will not reasonably yield to the inference that he converted the 91 items.

Under our practice, it is the function of the fact finder to draw inferences, and when the evidence will yield to two conflicting inferences, each of which is reasonable, we will accept whichever has been drawn by the trier of fact. *Spouting Rock Beach Ass'n* v. *Garcia*, 104 R. I. 451, 244 A.2d 871; *Hagan* v. *Osteopathic General Hospital*, 102 R. I. 717, 232 A.2d 596; *Glass-Tite Industries* v. *Spector Freight Systems, Inc.*, 102 R. I. 301, 230 A.2d 254; *Arden Engineering Co.* v. *E. Turgeon Constr. Co.*, 97 R. I. 342, 197 A.2d 743. In this case the evidence was susceptible to alternate inferences.

On the one hand, except for the bus and some folding chairs, there was no direct evidence tying defendant to the disappearance of the 91 items. Additionally there was the circumstantial evidence that the farm property had been vandalized in the past. The two taken together, defendant argues, suggest that the missing property had been taken by vandals or thieves or others for whose actions defendant could not be held responsible.

On the other hand, there was the positive testimony of Mrs. Babcock whose credibility the trial justice accepted in preference to defendant's. In the October 1960 - June

1961 interval she had checked the barn a number of times, and she always found it locked. Moreover she resided in the farmhouse which was situated near the barn and which fronted on the road leading to the barn area. From its vantage point she, as well as her husband, saw defendant early in June take some folding beach chairs out of the barn and load them in his car; she also saw him tow the bus away; and earlier on the day of the state police incident or on the previous day she observed defendant's truck pass her home empty on its way to the barn and later return fully loaded with "furniture, chairs, tables and all that stuff."

It was Mrs. Babcock's testimony together with defendant's towing away of the bus, his appropriation of the folding chairs, and his removal of the "junk" from the barn which provided the evidentiary matrix for the trial justice's finding that defendant was responsible for the taking of the 91 items. There can be little doubt as to its rationality and reasonableness, and it was therefore within the trial justice's province to accept it as factual and use it as the basis for his conclusion that defendant was guilty of conversion.

As an alternate defense, notwithstanding his at-trial denial of responsibility for appropriating the 91 items, defendant now concedes, perhaps arguendo, that he took the goods; and he justifies the taking by invoking the common-law right of distress which, broadly stated, permits a landlord to go upon demised premises and to seize all movables he might there find in order to satisfy his claim for overdue arrearages of rent. 2 Tiffany, *Landlord and Tenant* §325 et seq. (1910).

Obviously that argument, even if we were to assume that the remedy of distress is available to Rhode Island landlords, has no place in this case for it lacks the prerequisite evidentiary predicate of at least some showing

that defendant seized plaintiff's movables for the purpose of securing the rent arrearages.

The defendant next contends that the trial justice erred in allowing Mr. and Mrs. Babcock to testify as witnesses for plaintiff. That claim arises because plaintiff responding to written interrogatories listed "Mr. and Mrs. Richard Ba*n*cock," rather than Ba*b*cock, as the names of persons who were knowledgeable concerning his claims, and he gave their addresses as "address unknown, former address 20 Madison Avenue, West Warwick, Rhode Island." Defendant contends that this information was inaccurate, that it impeded his pretrial preparation, and that plaintiff's failure to complete and correct his answer within 10 days of the trial date as required by Super. R. Civ. P. 33(c)[1] so prejudiced him that the trial justice should have applied the sanction of Super. R. Civ. P. 37(d)[2] to bar the Babcocks from testifying.

This contention was first urged to the trial justice. Apparently it was obvious to him, as it is to us, that the misspelling of the witnesses' name was, if not inadvertent, at least inconsequential, and that in any event defendant, notwithstanding his claim of irreparable injury, knew that the Babcocks were his tenants in 1961 and had in fact interviewed one of them prior to trial. In the circumstances the trial justice found that defendant was not prejudiced

---

[1]Super. R. Civ. P. 33 (c) reads:
"If the party furnishing answers to interrogatories shall obtain subsequently information which renders such answers incomplete, amended answers shall be served not later than 10 days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct."

[2]Insofar as here pertinent Super. R. Civ. P. 37 (d) provides:
"If a party fails to serve amended answers to interrogatories as required by Rule 33 (c) the court may enter an order prohibiting that party from introducing evidence as to any matter which ought to have been the subject of amended answers, or the court may in its discretion pass the case on such terms and conditions as are just."

by the designation of the witnesses as "Bancock" instead of "Babcock," or by the insufficient address. We are not prepared to say that he abused his discretion in refusing to exclude the Babcocks' testimony. *Stewart* v. *Meyers,* 353 F.2d 691, 695-96.

The defendant also assigns as error the trial justice's ruling permitting plaintiff's expert, over objection, to give his opinion[3] of the value of each of the 91 items. The expert's testimony was based upon plaintiff's uncontradicted, uncomplicated and simple description of each of those items rather than upon a series of hypothetical questions. The short answer to defendant's contention is found in *Henderson* v. *Dimond,* 43 R. I. 60, 110 A. 388, where, in overruling an exception to a similar inquiry, we said:

> "A question assuming the truth of the testimony of a single witness, particularly when the facts stated by such witness are simple and his evidence is not contradicted, has been permitted in many cases and such a ruling of the trial court has been upheld on the ground that the propriety of questions in that form may well be left to the discretion of the justice presiding at the trial." (cites omitted). *Id.* at 67, 110 A. at 391. *Accord, Robinson* v. *Puritan Stores, Inc.,* 48 R. I. 131, 136 A. 243.

Finally defendant contends that the damages of $1 for the bus, and $2,789.50 for the 91 other items were grossly excessive and that it was improper to add interest from the date of the conversion. The record contained no evidence of the fair market value of the bus and accordingly nominal damages of $1 were assessed for its conversion. The evidence relative to the worth of the other 91 items

---

[3]"Q Did you hear Mr. Smith testify as to the condition, age and general description of a steamer trunk with ten or twelve brand new coolers?
"A I did.
"Q Do you have an opinion of their market value as of June 10, 1961?
"A I do.
"Q And what is that opinion?
"A Between eight and ten dollars each."

was limited to the testimony of plaintiff's expert. While the trial justice in assessing damages for the conversion of these items relied upon the expert's evaluations, he discounted those opinions as having been based upon plaintiff's exaggerated and distorted testimony about the worth and condition of his property. In our judgment there is evidentiary support for the fixing of damages, *Terrien* v. *Joseph,* 73 R. I. 112, 53 A.2d 923, and it was proper to add interest computed from the date of the conversion. *Heyer, Brothers* v. *Carr,* 6 R. I. 45.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Jackvony & DeConti, Louis V. Jackvony, Jr.,* for plaintiff.

*Alfred Factor,* for defendant.