331 A.2d 399.

STATE *vs.* CHARLES H. SPRAGUE, III.

FEBRUARY 6, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. The defendant, Charles H. Sprague, III, was convicted at a nonjury trial in the Superior Court on an indictment charging unlawful possession of marijuana. The state's case was based on evidence taken from the defendant's person by a police officer, and the defendant's challenge to the validity of that search and seizure was rejected at a pretrial suppression hearing on the ground that he had consented to what otherwise would have been an unconstitutional invasion. The case is now here on the defendant's appeal, and the only substantial assignment of error is to the validity of the search.

While on a routine patrol at about 2:30 in the morning, two uniformed state police officers observed a sports car operating on a dark and deserted highway with a defective headlight. They ordered the operator to stop. One of the officers recognized the driver as a known narcotic user, directed him to get out of the vehicle, and asked to see his operator's license and vehicle registration. At the same time, the second officer went to the passenger's side of the vehicle and requested defendant to get out. While the testimony differs on the exact words that followed, the officer asked defendant to disclose the contents of his pockets. The defendant complied initially by removing some things from his pockets, but then appeared to balk.

The officer noticed a slight bulge remaining at the bottom of defendant's left pants pocket, and asked defendant about it. The defendant then placed his hand in the pocket where the unidentified object was lodged. At that point the officer grabbed his arm, and defendant's hand emerged from the pocket holding a small plastic bag which contained a marijuana cigarette.

The state's attempt to justify the search and seizure as legally justifiable under the stop and frisk doctrine was rejected by the trial justice — in our opinion properly so under the principles enunciated in the *Terry-Sibron-Peters* trilogy[1] — on the ground that the police could not have reasonably inferred from the circumstances leading to the search that defendant was contemplating criminal behavior and that he was armed and dangerous.

The state argues alternatively that the search withstands constitutional scrutiny because it was conducted in a noncustodial setting pursuant to a valid consent without express or implied police coercion. The defendant does not question the settled principle that genuine consent validates a search, *Zap* v. *United States,* 328 U. S. 624, 628, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477, 1482 (1946); *Davis* v. *United States,* 328 U. S. 582, 593, 66 S.Ct. 1256, 1261, 90 L.Ed. 1453, 1460 (1946), and the state recognizes that when it relies upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was in fact freely and voluntarily given. *Bumper* v. *North Carolina,* 391 U. S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed. 2d 797, 802 (1968).

In this case defendant contends that the trial justice's consent finding was erroneous, but he fails to pinpoint in what respect the consent was deficient. Instead, he argues

---

[1]*See Terry* v. *Ohio,* 392 U. S. 1, 88 S.Ct. 1868, 20 L.2d.2d 889 (1968); *Sibron* v. *New York* and *Peters* v. *New York,* 392 U. S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968).

simply and generally that the state has failed to sustain its burden. That argument raises the fundamental question of what the state was required to show in order to establish that defendant's consent was legally effective.

Prior to 1973 there may have been room for argument on what constituted a valid consent, for the United States Supreme Court sometimes had referred to a person's consent to a search as a "waiver" of the right to refuse. *Johnson* v. *United States,* 333 U. S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436, 440 (1948); *Amos* v. *United States,* 255 U. S. 313, 317, 41 S.Ct. 266, 268, 65 L.Ed. 654, 656 (1921). This use of the term "waiver" lent support to the belief that the proof required to demonstrate a person's consent to a search was the same as that needed to establish an accused's waiver of certain other constitutional rights, specifically, a showing of "an intentional relinquishment or abandonment of a known right or privilege." *See Johnson* v. *Zerbst,* 304 U. S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). As applied in the search context, that burden was sometimes thought to require affirmative proof that the subject of the search both knew he had a right to refuse consent and in fact gave his consent freely with the understanding that it could have been lawfully withheld. *Cipres* v. *United States,* 343 F.2d 95, 97 (9th Cir. 1965).

That belief was laid to rest, however, in *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There the Court made clear that the knowing and intelligent waiver criterion applies only when what being tested is the validity of a waiver of the kind of right designed to preserve the fair trial process. By way of example, the Court enumerated several such rights, including those of an accused to receive the *Miranda*[2]

---

[2] *Miranda* v. *Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

warnings, to be represented by counsel at all critical points, to confront the witnesses against him, to be tried before a jury of his peers, to have a speedy trial, and to be advised of the rights he is foregoing if he elects to plead nolo contendere or guilty. *Id.* at 237-40, 93 S.Ct. at 2052-54, 36 L.Ed.2d at 868-70.

The Court went on to note, however, that those rights are intended to promote "the fair ascertainment of truth at a criminal trial." *Id.* at 242, 93 S.Ct. at 2055, 36 L.Ed. 2d at 871. As such, they differ vastly from the fourth amendment guarantees, which reflect "* * * the concern of our society for the right of each individual to be let alone," *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, 460 (1966), and which exist not to provide a fair trial, but only to protect the "security of one's privacy against arbitrary intrusion by the police." *Wolf* v. *Colorado,* 338 U. S. 25, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785 (1949).

These distinctions, among others, prompted the Court to treat a person's consent to a search differently from other waivers, and to conclude that a person's knowledge of his right to refuse consent can no longer be said to constitute a *"sine qua non* of an effective consent to a search."[3] *Schneckloth* v. *Bustamonte, supra* at 234, 93 S.Ct. at 2051, 36 L.Ed.2d at 867. It went on to say, however, that such knowledge still is a relevant factor which, together with the other surrounding circumstances, must be carefully scrutinized to determine whether consent was voluntarily given. *Id.* at 248, 93 S.Ct. at 2058, 36 L.Ed.

---

[3]It may be argued that *State* v. *Theroux,* 111 R. I. 617, 306 A.2d 44 (1973) and *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309 (1968), are at odds with our decision in this case. Those cases, however, are clearly distinguishable since each involved the search of a person *in police custody,* whereas our holding in this case—like the holding in *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed. 2d 854, 875 (1973)— is expressly limited to a search in a *noncustodial setting.*

2d at 875. It said further that courts resolving that factual question should adhere to the same definition of "voluntariness" traditionally controlling the admissibility of confessions. *Id.* at 223-24, 93 S.Ct. at 2045-46, 36 L.Ed.2d 860-61.

The limited record here reveals a nervous and fidgety defendant who, when confronted by two uniformed police officers on a dark and deserted highway in the early morning hours, readily conceded to a police request that he empty his pockets, even though he must have known that compliance would disclose possession of a marijuana cigarette.[4] Obviously, that sparse factual background is susceptible of conflicting inferences. One is that defendant, rather than acting voluntarily when he did this, was instead yielding to a coercive show of authority that might eventually have compelled him to produce the cigarette against his will.

The trial justice, however, thought otherwise and found that defendant had consented voluntarily. Undoubtedly, she was influenced by the absence of any direct testimony by defendant that he was even subtly coerced. Under our long-standing rule her finding is entitled to great weight and will not be disturbed by us absent a showing that it was based upon an oversight or misconception of material evidence on a controlling issue or was otherwise clearly wrong. That the finding here was in part inferential does not assist defendant, for it is a trial justice's function, not ours, not only to weigh the evidence and to pass upon the

---

[4]At least one court found it plausible to conclude that no rational person would voluntarily consent to reveal incriminating contraband. *Higgins* v. *United States,* 209 F.2d 819, 820 (D.C. Cir. 1954). But, that analysis has been expressly rejected in this circuit on the basis that the lawfulness of police conduct ought to depend on external manifestations of consent, rather than fortuitously on the nature of evidence obtained by an apparently voluntary disclosure. *Leavitt* v. *Howard,* 462 F.2d 992, 998 (1st Cir. 1972).

credibility of the witnesses, but also to draw inferences; and, any reasonable inference he draws will not be rejected simply because another equally reasonable inference could have been made. *Black* v. *Wiesner*, 112 R. I. 261, 269, 308 A.2d 511, 516 (1973); *Chase* v. *Blackstone Distrib. Co.*, 110 R. I. 537, 544, 294 A.2d 392, 395-96 (1972); *Smith* v. *DeFusco*, 107 R. I. 392, 395, 267 A.2d 725, 727 (1970); *Arden Eng'r Co.* v. *E. Turgeon Constr. Co.*, 97 R. I. 342, 348, 197 A.2d 743, 746 (1964).

Here, defendant baldly asserts that his consent was not voluntary, but he neglects to contend with any specificity that the trial justice overlooked or misconceived material evidence on that issue or was otherwise clearly wrong. Nor does he argue that the evidence in the case was any less susceptible of the inference drawn by the trial justice than it was of the inference he urges us to draw. For these reasons we are constrained to accept the trial justice's finding that defendant's consent was voluntary, and hence we find no error in her denial of defendant's motion to suppress.

The defendant also claims error on two other grounds. Both pertain to his contention that the legislative classification of marijuana as a narcotic is arbitrary, without a rational basis, and therefore unconstitutional. He asserts specifically that (1) the state's witness was not competent to testify concerning the narcotic properties of marijuana and (2) it was improper for the trial justice to base her ruling, that the classification of marijuana as a narcotic was reasonable, solely on evidence of the reported dangers to its users. Even were we to concede that these rulings were erroneous, the defendant would not be prejudiced. This is so because this court recently decided that the statutory classification complained of was rationally made and therefore valid. *State* v. *Beck*, 114 R. I. 74, 329 A.2d 190 (1974). Because the *Beck* decision disposes of the de-

fendant's ultimate contention and accords with the trial justice's ruling, any possible errors made by the trial justice in reaching her conclusion would be harmless.

The defendant's appeal is dismissed, the judgment of conviction is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Aram K. Berberian, Robert B. Tanenbaum,* for defendant.