377 A.2d 341.

RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, *Trustee*

*vs.* RICHARD J. ISRAEL, *Attorney General et al.*

AUGUST 29, 1977.

Reargument Denied September 30, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin and Doris, JJ.

JOSLIN, J.    Laura B. Sims (the testatrix) died in 1931 and in her will, which was probated in the city of Warwick, bequeathed a one-fifth share of the residue of her estate to the Providence Tuberculosis League (the League), a charitable organization. In 1974, when the time arrived for distribution of that share, the League's charter had been forfeited and it was no longer in existence. Thereupon, Rhode Island Hospital Trust National Bank, trustee under the testatrix's will, instituted this civil action for a determination of whether the testatrix had a general or special charitable intent in making the bequest to the League, and, if her intent was general, for directions on how the doctrine of cy pres should be applied to that bequest. Named as the defendants were the Attorney General of the state; Children's Friend and Service (the Service), a non-business corporation; Rhode Island Tuberculosis and Respiratory Disease Association, now known as Rhode Island Lung Association (the Association), also a nonbusiness corporation; and Laura Martin, the surviving daughter of Clara T. Parsons who was the testatrix's heir. At the hearing in the Superior Court, Laura Martin did not appear, the Attorney General submit-

ted the interests of the public to the court's care, and both the Association and the Service agreed that the testatrix had a general charitable intent in making the bequest to the League and that the doctrine of cy pres should therefore be applied. They disagreed, however, on which of them would so administer the League's share as to best carry out that intent. At the conclusion of that hearing, the trial justice found that the testatrix did not intend merely to make a gift to the League but that she manifested a general charitable intent and accordingly, pursuant to G.L. 1956 (1969 Reenactment) §18-4-1,[1] he directed that the doctrine of cy pres be applied and that the share be given to the Service. The Association appealed.

It appears that the testatrix left the residue of her estate in trust to pay the income to a named beneficiary during his lifetime, and upon his death, which occurred in 1974, to

> "pay over, free from this trust, all principal and accumulated income in five equal shares to the following corporations: the Rhode Island Hospital, a Rhode Island corporation, for general purposes; The Rhode Island Hospital for the benefit of The Crawford Allen Memorial Hospital; the Homeopathic Hospital of Rhode Island; the Providence Lying-in Hospital and The Providence Tuberculosis League for the benefit of the Lakeside Preventorium * * * ."

The League's purpose, as stated in its charter, was to conduct "a persistant campaign against tuberculosis in the city

---

[1]General Laws 1956 (1969 Reenactment) §18-4-1 reads as follows:

"Applications of cy pres doctrine. — In all cases of charitable gifts of real or personal estate, whether by deed or will, where the purposes of the donor cannot be literally carried into effect, a complaint may be filed for a cy pres application of the trust property; and thereupon all such proceedings, orders and decrees shall be had and taken in said suit, to carry out the intents of the donor as near as may be, that such charity may not fail, and to this end application as aforesaid may be made in the same complaint for appointment of new trustee or trustees under or pursuant to the provisions of §§18-2-1 to 18-2-8, inclusive, or under the general equity powers of the court."

of Providence by the stimulation and promotion of work in every field which concerns the prevention and eradication of the disease." From 1912 to 1951, first as a committee of Family Service, Inc. and later under its own corporate name, the League maintained a tuberculosis preventorium at a leased facility known as the Lakeside Home for Convalescent and Sickly Mothers and Children (Lakeside), where it provided care to children and mothers who were sick, convalescing, or in need of supportive physical care to avert illness. In the later years of this period (1934-1951), that care was rendered principally to children.

By 1950, however, it had become impractical to operate Lakeside, in part because the property had deteriorated to such an extent as to make it unsuitable for child occupancy, and in part because radical changes in the treatment and prevention of tuberculosis had rendered preventoria obsolete. Consequently, the League discontinued its operations at Lakeside in 1951 and, with the approval of the Council of Social Agencies and under authority of two Superior Court decrees,[2] the real estate on which Lakeside was situated was transferred to the Service. At the same time some of the equipment and personal property in use at the Lakeside facility and certain of the endowment funds that the League had received for the use of Lakeside were also transferred. Thereafter, the Service conducted a program in a newly constructed building at Lakeside that provides short-term protective care for children. The Service's Lakeside program, however, is only incidentally concerned with health and not at all with the eradication or cure of tuberculosis.

The Association's program is entirely different. It is principally concerned with the prevention and control of lung

---

[2]The decrees entered in the Superior Court for the County of Providence are *Family Service Inc.* v. *Powers,* Eq. No. 21550 (R.I. Super. Ct., Feb. 16, 1951), and *Providence Tuberculosis League* v. *Powers,* Eq. No. 21655 (R.I. Super. Ct., May 29, 1951).

diseases. Although it thus appears to have the same overall objectives as the defunct League, its program, unlike that formerly conducted by the League at Lakeside, is not patient- or treatment-oriented. Rather, it is concerned with informing and educating the public about the dangers of tuberculosis and the availability of tuberculosis testing, and with fostering and coordinating tuberculosis prevention activity in the area.

Although this case involves an intended charitable beneficiary that had ceased to exist before the gift to it took effect, the trial justice's obligation was the same as in other cy pres situations: to substitute for the named beneficiary another charitable organization which satisfies the original dispositive purpose as closely as possible. Section 18-4-1; Fisch, Freed & Schachter, *Charities and Charitable Foundations*, §578 at 447 (1974); 2 Restatement (Second) *Trusts* §399 at 297 (1959); *see Rhode Island Hosp. Trust Co. v. Williams*, 50 R.I. 385, 148 A. 189 (1929).

The critical issue for the trial justice then, was to determine whether in making this gift to the League the testatrix manifested, as argued by the Service, a primary commitment to the maintenance of an institution concerned with caring for the physical and mental well being of individual children on a local level, or whether instead, as urged by the Association, it would have been her wish after the closing of the Lakeside Preventorium that her bequest be used for the prevention of tuberculosis and other lung diseases through education.

The trial justice decided that issue in favor of the Service, and the Association now argues that his decision relied too heavily on the evidence that all the charitable institutions named as beneficiaries in the residuary clause of the testatrix's will were patient-care, treatment-oriented service institutions. It argues that he should instead have given greater weight to the evidence that the gift to the League for the benefit of Lakeside was in aid of a program principally

concerned with the prevention rather than the treatment of disease. That function, the argument continues, is now fulfilled by the Association, rather than the Service, albeit somewhat differently from the way in which the League originally performed it.

The conflicting claims of the two institutions suggest that in a cy pres proceeding there may be more than a single qualifying substitute. That is certainly so in a case like this, where the original gift apparently was motivated by more than one purpose. Thus, though the choice may have been difficult, the trial justice had to ascertain which purpose dominated and which of the two institutions would better fulfill that purpose. In seeking answers to those questions, it was entirely proper for the trial justice to consider, in addition to the language of the will, the extrinsic circumstances including the nature of the activities of the other charities named as beneficiaries in the residuary clause of the will. Fisch, Freed & Schachter, *Charities and Charitable Foundations, supra,* §588 at 465. *See Industrial Nat'l Bank* v. *Guiteras,* 107 R.I. 379, 388, 267 A.2d 706, 711 (1970).

He observed that each charity provided care directly to individuals; that Crawford Allen Memorial Hospital and the Providence Lying-In Hospital furnished child care; and that from 1934 to 1951 Lakeside's principal function was to supply services for children under the age of 15. These functional similarities impressed him as indicating an overriding intention to provide direct personal services to children. In the light of all the circumstances, we are not prepared to say that he misjudged the evidence when he found that the Service, which presently operates Lakeside as a residential Children's facility and provides personal care for their needs, medical and otherwise, would be a better substitute for the testatrix's original choice than would be the Association, which has no direct or personal contact with the community and which carries on its work principally by conducting programs directed toward informing and educating

the public about respiratory diseases, its dangers, means of prevention and the like.

Another of the Association's contentions involves a separate proceeding instituted by the League in the Superior Court in 1960.[3] In that proceeding the League asked that the cy pres doctrine be applied to a testamentary gift, the provisions of which were substantially like those in this case and read as follows:

> "Twenty (20) shares to the Providence Tuberculosis League, the same to be held by it as a permanent fund, to be known as the 'Henry W. and Mary H. Sackett Fund', and the income therefrom to be applied from time to time to the uses and purposes of the Lakeside Home and Preventorium * * * ."

Other residuary beneficiaries in that will, just as in this case, included the Rhode Island Hospital, the Crawford Allen Memorial Hospital, the Providence Lying-In Hospital and the Homeopathic Hospital of Rhode Island. At the time of the suit, the Service, not the League, was operating Lakeside. Notwithstanding, the Service, in answering the complaint, did not contest and in fact admitted the correctness of the League's allegation that Mary Sackett's original intention could best be realized by authorizing the League to use the income from the fund, not for the operation of Lakeside, but in other types of efforts to combat tuberculosis.

The Association argues that the Service's position in the present case is completely inconsistent with the admission in the Sackett case and that consequently the trial justice erred in discounting that admission's weight as a factor in determining the testatrix's predominating intention. An admission in a pleading in a separate, unrelated case,

---

[3]*Providence Tuberculosis League* v. *Nugent,* Eq. No. 28734 (R.I. Super. Ct., Dec. 14, 1960) filed in the office of the clerk of the Superior Court for Providence County.

however, is only a quasi admission. 4 Wigmore, *Evidence* §1065 at 71-72 (Chadbourn rev. ed. 1972). It is *"not in any sense final or conclusive,"* but is instead an inconsistency in a pleader's proof which a trial justice should consider along with other evidence and which he may, just as with that other evidence, credit or discredit. *Id.* §1059 at 27. That is exactly what the trial justice did in this case when he found in substance, that the proceeding in which the quasi admission had been made was not "adversary" in a realistic sense and was therefore not entitled to receive the same weight it might have been accorded had the parties really been at odds. In so finding, he was doing no more than performing what we have so often said is a trial justice's obligation — to consider the material evidence in a case and to pass on its weight.

Finally, the Association contends that the record in this case consists only of documented facts and substantially undisputed testimony and that consequently this court is in as good a position as was the trial justice "to apply the facts to the law and thus to dispose of the dispute." But that contention runs afoul of our recognition that a trial justice's role in the factfinding process is not confined to weighing the evidence and passing on the credibility of witnesses, but includes also the drawing of inferences, and that those inferences, if reasonable, are entitled on review to the same weight as his other factual determinations. *State* v. *Sprague,* 114 R.I. 282, 287-88, 331 A.2d 399, 403 (1975); *Smith* v. *DeFusco,* 107 R.I. 392, 395, 267 A.2d 725, 727 (1970); *Arden Eng'r Co.* v. *E. Turgeon Constr. Co.,* 97 R.I. 342, 348, 197 A.2d 743, 746 (1964). There is no contention here that the inferences drawn by the trial justice were unreasonable, and this being so, there is no need for us to test for unreasonableness and, if we find it, to engage in the inference-drawing process.

The Service has also filed an appeal apparently to reserve its right to question the award of expenses and attorney fees

to the Association. That question, however, was neither briefed nor argued and is therefore deemed waived,

The appeals of both the Children's Friend and Service and the Rhode Island Lung Association are denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

Petition for reargument denied.

MR. JUSTICE KELLEHER did not participate.

*Robert B. Gates,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *J. Peter Doherty,* Special Assistant Attorney General, *Charles J. McGovern, John G. Coffey, Jr.* (for Children's Friend and Service), *Adolph N. Anderson, Jr., Charles H. Drummey* (for Rhode Island Lung Association), for defendants.