402 A.2d 591.

CAROLYN P. WICKES *vs.* SOLOMON KOFMAN ET AL.

JUNE 21, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This is an appeal from an order of the Superior Court granting certain preliminary relief to the plaintiff Carolyn P. Wickes on the basis of a partial submission of the controversy to the trial justice on a comprehensive stipulation of facts. The case originally came before us on petition for certiorari, but we have treated this petition as a notice of appeal.[1] The relief granted was a mandatory injunction that "[d]efendants shall forthwith execute and deliver to Plaintiff, in a form suitable for recording, a discharge of the sales agreement between the parties dated August 30, 1977, which has been recorded in the Records of Land Evidence of the City of Warwick." The order also terminated any interest of the defendants in the real estate which was the subject of the controversy and enjoined them from trespassing on said real estate. From this order the defendants appealed.

This controversy arose out of an agreement for the sale of 60 acres of land with a house and certain ancillary improvements thereon located in the city of Warwick. The parties made the following stipulations:

---

[1]Although not a final judgment, the order has such elements of finality as would qualify it for immediate appeal under G.L. 1956 (1969 Reenactment) §9-24-7. *See Johnson* v. *Johnson*, 111 R.I. 46, 298 A.2d 795 (1973).

"1. Plaintiff is and at all times material hereto was the owner of a parcel of improved real estate located at 794 Major Potter Road, which parcel is designated at Lots Nos. 1 and 4 on Warwick Assessor's Plat 225.

"2. Plaintiff resided on said parcel for a period of approximately thirty years prior to October 30, 1977.

"3. On or about August 30, 1977, Plaintiff and Defendant, Solomon Kofman, entered into an Agreement, a copy of which is appended hereto as Exhibit A.

"4. In entering into said Agreement, Defendant, Solomon Kofman, acted both in his individual capacity and as the agents of Defendant, Israel Kofman, pursuant to an undisclosed arrangement between them whereby Defendants were to share the cost of purchase and the beneficial ownership of the aforesaid real estate.

"5. At all times material hereto, Plaintiff was ready and willing to perform her obligations under the aforesaid Agreement.

"6. Defendants have failed to complete purchase of Plaintiff's real estate or to pay the balance due on the purchase price despite repeated requests on the part of the Plaintiff.

"7. On or about November 4, 1977, the Plaintiff sent to Defendant and Defendant received the letter, a copy of which is appended hereto as Exhibit B.[2]

---

[2]Exhibit B is a letter directed to the defendant Solomon Kofman which reads as follows:

"Dear Mr. Kofman:

I was very disappointed by your refusal to close the purchase of my property on Major Potter Road in Warwick within the time prescribed in our agreement of August 30. As I am sure your attorney has told you, I was relying on the proceeds from that sale to fulfill a commitment I made to purchase a replacement home in Connecticut after our agreement was executed. Without those funds, I could stand to lose both my $8,750 deposit and the property if something is not done shortly.

I would like you to know that although the closing date set forth in our

"8. Prior to execution of the aforesaid Agreement, said Israel Kofman and Gerard Pouliot, Defendants' real estate agent, inspected the aforesaid real estate but not the house.

"9. Plaintiff has never made any representations to Defendants with respect to the soil conditions or percability of the property in question.

"10. Defendants caused the aforesaid Agreement to be recorded in the Records and Land Evidence in the City of Warwick on October 28, 1977.

"11. The fact that said Agreement has been recorded constitutes a cloud on Plaintiff's title to the property in question which prevents her from selling same.

"12. Plaintiff has a buyer ready and willing to purchase a portion of said property but cannot complete the sale because of the recording of the aforesaid Purchase Agreement.

"13. The aforesaid Purchase Agreement has never been extended except to the extent provided in Exhibit B.

"14. Said Purchase Agreement has not yet been filed with the Rhode Island Department of Health.

"15. There is no public sewer system presently servicing the property in question.

---

agreement has passed, I will continue to remain ready, willing and able to make conveyance to you until November 11.

If you still refuse to close by that time, I shall then consider our agreement definitely breached and any obligation on my part terminated. I will then put the property back on the market and commence suit against you.

I sincerely hope that you will reconsider your proposition before November 11.

Sincerely yours,

Carolyn P. Wickes"

The date prescribed for execution in the agreement was October 30, 1977.

"16. The Defendants have never informed the Plaintiff as to what use they intended to make of the property in question upon purchasing same.

"17. Prior to October 30, 1977, the Plaintiff did not engage any engineer to make soil tests of said property.

"18. Prior to October 30, 1977, Plaintiff permitted Defendants to enter upon said property and perform any percolations or ground water elevation tests they desired.

"19. Prior to October 30, 1977, the Defendants, or their agents, did in fact enter upon said property and dig approximately five test holes.

"20. Defendants have not yet attempted to get certification from the Department of Health of the results of said tests.

"21. Defendants have never asked Plaintiff to perform any tests with respect to said property.

"22. The period from August 30, 1977 to October 30, 1977 did not include the 'wet season.'

"23. On October 30, 1977, Plaintiff vacated the property in question to fulfill a commitment to purchase a new residence and since that time Plaintiff has been required to make mortgage payments on the residence and pay the taxes and maintenance and expenses on the property in question."

In addition to the foregoing stipulations, counsel agreed orally before the trial justice that the parcel consisted of 60 acres and that defendants had purchased 4 or 5 undeveloped parcels of land during the past 5 or 6 years and had later subdivided and sold such parcels.

On the basis of the foregoing stipulations, the trial justice made the following findings:

"As the Court has already stated, the respondents do not seek any relief. The respondents have merely set up

a defense to the agreement. In substance, the defendant says that the agreement is not enforceable. Yet, in spite of this, the respondents have placed the agreement on record, thus creating a cloud on the complainant's title.

"The Court finds that the respondent had ample time to perform percolation tests even during the wet weather, and they have not done so. They have not requested specific performance. They have not tendered the amount due under the agreement. Under the circumstances, the Court has no alternative but to grant the relief prayed for."

We have enunciated on many occasions the principle that when a case is submitted to a trial justice sitting without a jury, the findings of fact will be afforded great weight and will not be set aside on appeal unless an appellant can show that the trial justice either misconceived or overlooked material evidence or that he was clearly wrong. *Jakober* v. *E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 265 A.2d 429 (1970). This principle is applicable to the drawing of inferences from undisputed facts as long as such inferences are reasonable. *Rhode Island Hospital Trust National Bank* v. *Israel*, 119 R.I. 298, 377 A.2d 341 (1977); *State* v. *Sprague*, 114 R.I. 282, 331 A.2d 399 (1975); *Smith* v. *DeFusco*, 107 R.I. 392, 267 A.2d 725 (1970). An examination of these stipulations of fact in the framework of the pleadings in the case supports the inferences drawn by the trial justice as eminently reasonable.

On appeal defendants have argued vigorously that they were unable to take percolation tests during the wet season. The short answer to this contention is that no portion of the stipulation of facts indicates in any way that defendants did not have the opportunity to take such tests. The defendants have contended for the first time on appeal that they applied for permission to take percolation tests after the wet season some months after this action had been commenced and that the parties were unable to agree to the preconditions for the taking of such tests. It is a familiar principle that this court will not consider matters which have been raised for the first

time on appeal. *Tente* v. *Tente,* 112 R.I. 636, 314 A.2d 149 (1974); *Hawkins* v. *Smith,* 105 R.I. 669, 254 A.2d 747 (1969); *Romeo* v. *Cranston Redevelopment Agency,* 105 R.I. 651, 254 A.2d 426 (1969); *Sprouting Rock Beach Association* v. *Garcia,* 104 R.I. 451, 244 A.2d 871 (1968).

Thus, on the stipulated facts, defendants, who had failed to complete the transaction by the expiration date of the sales agreement and who did not indicate any intention, immediate or prospective, to carry out the obligation to purchase this property, were holding an interest by virtue of having recorded the sales agreement. This made it impossible for plaintiff to convey the real estate, or any portion thereof, and made it more difficult for plaintiff to meet financial commitments required by the purchase of a new residence. The trial justice held that under these circumstances, plaintiff was entitled to relief. We agree.

Although defendants argue that time was not of the essence in this agreement, we have previously enunciated the following rationale in respect to time on a real estate contract:

> "Ordinarily contract provisions relating to time do not by their mere presence in an agreement make time of the essence thereof so that a breach of the time element will excuse nonperformance. *Safeway System, Inc.* v. *Manuel Bros.,* 102 R.I. 136, 228 A.2d 851; *Sal's Furniture Co.* v. *Peterson,* 86 R.I. 203, 133 A.2d 770. However, this principle does not mean that a party can be completely oblivious to a stipulation in a contract relating to time, but it assumes that a party to a contract will proceed in good faith towards the completion of his undertaking. A person cannot neglect the contractual provision of an agreement to suit his own convenience or profit." *Jakober* v. *E.M. Loew's Capitol Theatre, Inc., supra,* 107 R.I. at 114, 265 A.2d at 435.

We observe that nearly 7 months elapsed following the expiration date of the contract of sale before this matter was reached for hearing. The defendants here were no longer

entitled under any theory to prevent alienation of this property.[3]

Many of the arguments raised by the defendants on this appeal in regard to excuse for nonperformance may be asserted in the trial court by way of defense to the plaintiff's claim for damages in the event that an appropriate factual basis is established for such defenses at future hearings. On this record they cannot be considered.

For the reasons stated, the defendants' appeal is denied and dismissed; the order of the Superior Court granting preliminary injunctive and declaratory relief is hereby affirmed, and the case is remanded to the Superior Court for further proceedings.

*Saunders & Torres, Ernest C. Torres,* for plaintiff.

*Smith & Smith, Incorporated, Z. Hershel Smith,* for defendants.

---

[3]We note that the plaintiff seeks relief in one of the counts in the complaint by way of specific performance against these defendants. Obviously, in the event that all or a portion of this property is conveyed during the course of this litigation, this will constitute an election of remedies which would be inconsistent with the claim for specific performance and would preclude such relief from being ultimately granted.