**INDUSTRIAL NATIONAL BANK OF RHODE ISLAND**

v.

**James K. SEARLES et al.**

**No. 81–152–Appeal.**

Supreme Court of Rhode Island.

March 5, 1982.

Hinckley, Allen, Salisbury & Parsons, Michael P. DeFanti, David W. Zizik, Providence, for plaintiff.

DiSandro-Smith & Associates, P. C., Inc., Z. Hershel Smith, Providence, for defendants.

## OPINION

SHEA, Justice.

This controversy involves a situation wherein a proposed buyer of real estate, unable to obtain financing, recorded his purchase-and-sale agreement for the purpose of preventing the owner from selling the property to others. The issue here, simply stated, is whether or not a frustrated purchaser of real estate should be permitted to use the provisions of G.L.1956 (1969 Reenactment) §§ 34–13–1 through 34–13–10 (Recording of Instruments) in this fashion. We say that he should not.

The sequence of events in this case is of some importance to our conclusions, and therefore a somewhat lengthy recitation of the facts is in order.

The evidence establishes that James K. and Joyce R. Searles (the Searleses) viewed property being shown by a real estate broker, Louis Rossi (the broker). The property was located at 1 Kirkbrae Drive, Lincoln, Rhode Island. Title to the property was held by Industrial National Bank of Rhode Island (Industrial), which had obtained title through mortgage foreclosure proceedings against the prior owners.

On May 11 or 12, 1978, the Searleses gave the broker a $500 deposit on the property. On May 22 they paid the broker an additional $1,500 and discussed with him some financing arrangements he was engaged in with and through Mr. Searles's father-in-law, who was to assist the Searleses with a mortgage application with Industrial National Bank. No application was ever made by the Searleses to Industrial. On August 28, 1978, a purchase-and-sale agreement between the Searleses and Industrial was entered providing, among other things, (1) that the closing would take place on or about October 1, 1978, (2) that the agreement was subject to the Searleses' obtaining a $72,000 mortgage from a Rhode Island financial institution, and (3) that Industrial would install a certain drainage pipe on the property. At this approximate time, the Searleses filed a mortgage application with Peoples Savings Bank. October 1 came and went without a closing; the Searleses had not obtained financing. On October 5 the mortgage application with Peoples Savings Bank was denied. Without advising the broker of the denial, Mr. Searles asked him for assistance in preparing a letter of explanation to Peoples regarding the circumstances surrounding his bankruptcy and discharge in 1972. This bankruptcy had not been disclosed on the application to Peoples.

At about this time the broker informed Mr. Searles that a closing would have to occur by the 15th or 16th of October or the property would be sold to another purchaser. On October 15 or 16 the broker checked

with Peoples regarding the status of the Searleses' mortgage application, only to find it had been denied on October 5.

On October 20 Industrial entered into a purchase-and-sale agreement with another purchaser. On the 25th of October the Searleses were tendered the return of their deposit by the broker. Mr. Searles refused to accept the refund, and refused also to execute a release of the purchase-and-sale agreement, but he did suggest that the broker might be able to find another piece of property for him. On October 27, without notifying Industrial, or the broker, Mr. Searles filed and recorded his purchase-and-sale agreement with Industrial in the land-evidence records of the town of Lincoln. He had had some experience in real estate and he both knew and intended that this recording would effectively prevent Industrial from selling the property to anyone else. On December 21 an attempted sale by Industrial to the second purchaser failed because of the recording of the agreement. On January 10, 1979, the broker again asked Mr. Searles to remove the purchase-and-sale agreement from the records, and he refused. On May 15, 1979, the Searleses' second mortgage application with Peoples was denied. Peoples had been unable to obtain a credit report because on May 2nd of that year Mr. Searles had instructed the Rhode Island Credit Bureau not to furnish the report to Peoples Savings Bank.

On June 13, 1979, Industrial brought this suit against the Searleses seeking damages for disparagement of title, a declaration that Industrial owns the land free of incumbrances, and an injunction directing that the Searleses remove the recorded agreement from the land-evidence records. The Searleses filed a counterclaim for specific performance of the agreement, alleging that they desired to purchase the real estate but at no time alleging or asserting that they were ready, willing, or able to do so.

After a hearing in Superior Court held more than a year following the date fixed for closing in the purchase-and-sale agreement, the trial justice found that the Searleses, even then, were not ready, will-

ing, or able to purchase the real estate. In response to direct questions from both counsel and the court, the fact was established that the Searleses had not obtained financing even though three attempts to do so through banking institutions had been made. Furthermore, Mr. Searles claimed that although he had assets which, if liquidated, could produce the money needed to cover the purchase, he would suffer serious financial loss by such liquidation and was simply not willing to do so. He had never demanded conveyance from Industrial. It was obvious that he was never in a position to do so. The trial justice awarded no damages to Industrial because no evidence of damages was presented.

The Searleses have appealed from the granting of a mandatory preliminary injunction ordering them to give Industrial a cancellation of the agreement suitable for recording. They argue principally that a preliminary injunction should be issued only to preserve the status quo pending a hearing on the merits. This argument would be valid in the case of a prohibitive injunction, when ordinarily a preliminary injunction will issue when the trial justice is persuaded that a preservation of the status quo is necessary. Different considerations apply when mandatory injunctive relief is sought. "When an injunction, mandatory in its nature is asked for, a stricter rule obtains. Owing to the extraordinary character of the remedy, it should be granted on preliminary application only in cases of great urgency and when the right of the complainant is very clear." *Giacomini v. Bevilacqua*, 118 R.I. 63, 372 A.2d 66, 67 (1977) (quoting *Smart v. Boston Wire Stitcher Co.*, 50 R.I. 409, 415, 148 A. 803, 805 (1930)).

This case is virtually identical to the case of *Wickes v. Kofman*, R.I., 402 A.2d 591 (1979). In that case this court affirmed the award of a mandatory preliminary injunction to a seller of real property in a situation in which the buyer had recorded the sales agreement but had not purchased the property. The injunction ordered a discharge of the recorded agreement. The Searleses insist there is a difference be-

tween these cases. They argue that the reason the mandatory injunction was upheld in the *Wickes* case was that no counterclaim for specific performance had been filed by the buyers. There, the lack of such a counterclaim was mentioned by the trial justice as one of the reasons for granting the mandatory injunction. It is the Searleses' position that their filing a counterclaim for specific performance creates a great distinction between *Wickes* and the case before us. There is no such distinction and the counterclaim in this case appears to be a transparent attempt to create one. The existence or nonexistence of a counterclaim for specific performance is a factor that the trier of fact could consider, but it is in no way dispositive.

█ In the case before us we have a purchaser whose own testimony establishes that he could not arrange any financing for a period of over a year beyond the date set in the agreement. Even at the time of hearing, he could not raise the money he needed immediately without incurring considerable financial loss, which he was unwilling to do. Yet he recorded the sale agreement in question for the sole purpose of creating a cloud on the title and making the sale of the property to anyone else impossible. It would be difficult to envision a clearer case of right on the part of the petitioner seeking mandatory injunctive relief than in the case before us. Mr. Searles's recording of the agreement after he was unable to get financing was a blatant misuse of the recording statutes. On the evidence in this record, the recording of the agreement preventing Industrial from selling the property was a proper subject for mandatory preliminary injunctive relief. The trial justice was correct in granting the preliminary injunction.

█ The Searleses argue that the dismissal of their counterclaim by the trial justice after granting the preliminary injunction was error because they were entitled not only to have a hearing on the merits but also to have their counterclaim for specific performance heard on the merits as well. It is a well-established rule that

a trial justice's findings when sitting without a jury will be afforded great weight and will not be set aside on appeal unless it can be shown that the trial justice either misconceived or overlooked material evidence or that he was clearly wrong. *Wickes v. Kofman*, R.I., 402 A.2d 591 (1979); *Jakober v. E. M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 265 A.2d 429 (1970). After careful consideration of the evidence and the findings of the trial justice, we conclude that he was correct in dismissing the counterclaim for specific performance of the agreement because that agreement was no longer enforceable.

The issue decided at the hearing on preliminary injunction was whether or not the Searleses still had any rights under the purchase-and-sale agreement. That was the only issue in the entire case. Since the Searleses had no rights under the agreement which had expired, their claim for specific performance was insupportable. There was no error in dismissing it.

█ We are not unmindful that in *Montaquila v. St. Cyr*, R.I., 385 A.2d 673 (1978), this court remanded that case to the Superior Court for hearing on the merits when the trial justice, after hearing the matter on preliminary injunction only, entered a preliminary injunction and then granted a Rule 12(b)(6) motion to dismiss on which he had previously reserved decision. Because of the "potential for unfairness" in dismissing the entire action after hearing on preliminary injunction only, the case was remanded to afford the parties a hearing on all issues raised in their complaint. The difference between that case and the one before us is that other major issues were raised in the *Montaquila* complaint. Important constitutional questions raised in that case were later considered by this court in *Montaquila v. St. Cyr*, R.I., 433 A.2d 206 (1981), on appeal after the remand. In the first *Montaquila* case the trial justice had before him only the preliminary-injunction issue, whereas the other major and complex issues remained to be tried. In this case, as in *Wickes v. Kofman, supra*, the determination to issue a preliminary injunction was dis-

positive of the only question involved, which was whether or not the parties remained bound by an agreement long after its time for performance had passed.

The Searleses argue also that since Industrial had not installed the drainage pipe as it had agreed, prior to the date for closing, they should not be penalized for failing to meet the time requirement. The trial justice found, however, that by the date of the hearing before him the work had been satisfactorily completed; it is not now a material issue in the case.

The Searleses' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.