Ernest R. BENGTSON in his capacity as
Executor of the Estate of
Joseph Rossi

v.

Mildred D. HINES et als.

No. 81–281-Appeal.

Supreme Court of Rhode Island.

March 15, 1983.

Reargument Denied April 29, 1983.

**248**

Dominic St. Angelo, Providence, for plaintiff.

Anthony E. Grilli, Providence, for defendants.

## OPINION

**MURRAY, Justice.**

This is a civil action in which the executor of an estate sued to impose a constructive trust for the benefit of the estate on moneys allegedly obtained from the decedent by misrepresentation, fraud, and undue influence. Claims against two of the defendants were dismissed in the course of a nonjury trial. Judgment for the plaintiff was entered against the third defendant, who now appeals.

The plaintiff Ernest R. Bengtson is the son and executor of the estate of the late Joseph Rossi, who died on April 16, 1978. The defendant Mildred Hines worked for Joseph Rossi for many years in various capacities. She began as a waitress in the tavern he owned and gradually assumed managerial and bookkeeping responsibilities. In addition, Mildred and her husband, James, provided many personal services for Joseph Rossi, including shopping, cooking, doing his laundry, and caring for him when he was ill.

The controversy arose over a bank account in the amount of $38,745.44. According to the testimony at trial, Mr. Rossi opened an account, No. 06–20617, on May 20, 1971, at the Old Stone Bank. This was a joint account that contained approximately $37,000, and was in the names of Joseph Rossi and Mildred Hines. On May 2, 1977, Mr. Rossi closed account No. 06–20617 and transferred the entire sum of $37,474.59 to another account in the same bank. That account, No. 49652680, was in his name only. Mildred testified that she did not become aware of the transfer of these funds until early March, 1978.

Mildred further testified that on March 26, 1978, when she and her husband visited Mr. Rossi in the hospital, he instructed her to take the bankbook from account No. 49652680, withdraw the money from that account, and place it into an account in the Hineses' names. Within the next two days Mildred went to the Old Stone Bank where she was told that the bank required Mr. Rossi's witnessed signature in order for her to withdraw money from that account. She returned to the hospital where she procured Mr. Rossi's notarized signature on the withdrawal slip. She then obtained a cashier's check made out to Mr. Rossi in the amount of $38,745.44,[1] returned with it to the hospital to get Mr. Rossi's endorsement, and deposited that check into a new account in the names of Mildred and James Hines at Warwick Federal Savings & Loan Association.

The next day she withdrew $5,000 and placed this amount in a checking account in her name and that of Ray Jacobson.[2] She testified that she voluntarily opened this account in order to pay Mr. Rossi's bills and that she did in fact pay some of his bills from that account.

---

**1.** This amount represented the entire principal plus interest minus a fee for early withdrawal.

**2.** Ray Jacobson was formerly employed as the bartender in Mr. Rossi's tavern. In addition, he lived with and cared for Mr. Rossi for approximately twenty years. Initially, he was a defendant in the present suit; however, the claim against him was dismissed.

Mildred Hines maintained that Mr. Rossi's bank account of more than $38,000 was a gift to her and that he had explicitly stated that he intended to give her this money for all the favors she had done for him. She admitted that there was nothing in writing to this effect and that there were no other witnesses to the gift besides her husband, who corroborated her testimony. She also admitted that she had never mentioned this gift to Mr. Rossi's nephew, son, or anyone else.

Mr. Bengtson testified regarding several visits and conversations he had with his father during the period from January 28, 1978, until his death. He testified that Joseph Rossi executed a will on or about February 1, 1978, in which he left $10,000 each to Ray Jacobson and to Mildred Hines. Approximately three weeks later, Mr. Rossi executed a second will in which he left $20,000 to Ray Jacobson and nothing to Mildred Hines. According to Mr. Bengtson's testimony, Mr. Rossi stated that the reason for the change was that Mrs. Hines had earned enough money from him during his lifetime. There was also testimony that Mr. Rossi was angry with Mildred because she had told his son that she no longer wished to take care of his financial affairs. At the same time, Mr. Rossi refused to sign a power of attorney for the purpose of paying his bills. He stated that he would set up a joint account between Mildred and Ray Jacobson to take care of those matters.[3]

During the course of the trial, plaintiff's counsel, over objection, elicited testimony from both Mr. Bengtson and Mildred Hines that Mildred had filed a claim against the estate in the amount of $40,000, which claim had been disallowed. She testified that this claim had been based on the services she had performed for Joseph Rossi during his lifetime. The plaintiff's counsel, again over objection, subsequently introduced the complaint Mildred filed in Providence County Superior Court against the executor of the estate of Joseph Rossi in the amount of $40,000 as compensation for services rendered to Joseph Rossi during his lifetime. The court ruled, in response to counsel's objection, that the complaint was admissible and relevant to the issue of credibility or interest in the outcome of a case.

At the conclusion of the testimony, the trial justice rendered a bench decision. After a detailed summary of the facts, the court found that Mr. Rossi did not intend to make a gift in the amount of $38,475.44 to Mildred Hines. She found that Mr. Rossi merely intended to make arrangements to pay his bills. She thereupon directed judgment to enter for plaintiff in the amount of $38,745.44 plus interest, less certain authorized deductions for bills paid by Mildred on Mr. Rossi's behalf. Judgment was entered on March 3, 1981, and defendant filed a timely notice of appeal.

The defendant contends on appeal that the trial justice committed reversible error when she admitted and considered evidence of the pending suit filed by defendant against the executor of Joseph Rossi's estate, claiming $40,000 for services rendered. The defendant argues that a seemingly conflicting pleading in another action may not be considered an admission that can be used to impeach a party's credibility. She further maintains that to admit such a pleading into evidence runs counter to the liberal rules of modern pleading that permit parties to advance alternative theories of recovery or defense. The defendant's contentions, however, ignore the great weight of authority on the subject in this jurisdiction and others.

This court has held that pleadings in prior cases are admissible against a party in a subsequent action on the basis that such a pleading constitutes an admission by a party-opponent. *Atlantic Paint & Coatings, Inc. v. Conti*, 119 R.I. 522, 529, 381 A.2d 1034, 1037 (1977). We have also held that

---

**3.** There was testimony from all sides that Mr. Rossi was a difficult and demanding man and that at this point he was very ill.

even after the pleadings have been amended, the original complaint may be admissible for purposes of impeachment. *Gormley v. Vartian*, 121 R.I. 770, 403 A.2d 256 (1979).

In *Gormley*, the plaintiff argued, as defendant does here, that Rule 8(e)(2) of the Superior Court Rules of Civil Procedure permits a party to plead alternative causes of action and that one who utilizes this pleading technique should not be penalized by impeachment directed at inconsistency. There, we responded that "the rule permitting the liberal amendment of pleadings allows a litigant to change horses in midstream but does not relieve him of the burden to show why it was necessary to do so." *Id.* at 777, 403 A.2d at 260. We respond similarly to defendant's argument in this case.

The defendant has chosen to maintain a separate cause of action against the executor of the estate of Joseph Rossi for compensation for services rendered. This is certainly permissible under the rules of civil procedure, as long as a party is acting in good faith and is not barred by res judicata or collateral estoppel. 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1283 at 376–77 (1969). The defendant could have brought that action as a counterclaim in the case before the court. Had she done so, the contradictory claim would have been considered a "judicial admission," which is conclusive in its nature and could not be raised as an inconsistency in the same cause of action. *See* 4 Wigmore, *Evidence* § 1064(2) at 67, 70 (Chadbourn rev. 1972). However, a pleading in a separate cause of action is merely a "quasi admission," which is not conclusive in any sense. *Id.* § 1066 at 76. It is merely an inconsistency in a pleader's proof, which may be treated like any other admission or inconsistent statement for purposes of impeaching credibility. *Id.* § 1059 at 27. *See Rhode Island Hospital Trust National Bank v. Israel*, 119 R.I. 298, 305–06, 377 A.2d 341, 345 (1977).

A party who asserts contradictory claims in separate and distinct actions therefore assumes the risk that those inconsistencies may be used to impeach his or her credibility. This is the benefit and the detriment in our modern liberal rules of pleading.

Furthermore, we do not find defendant's attempt to distinguish the admission of prior pleadings and those in a subsequent action to be helpful to her cause. This court has held that pleadings that have been either resolved or superseded are viable as admissions for the purpose of impeaching credibility. *Gormley v. Vartian*, 121 R.I. at 777–78, 403 A.2d at 260; *Atlantic Paint & Coatings, Inc. v. Conti*, 119 R.I. at 529, 381 A.2d at 1037–38. We think that pleadings in a pending case which are still active claims are equally appropriate as evidence of inconsistency which may be used to impeach credibility. Of course, as we have said, in all cases a party may offer an explanation to the trier of fact for the inconsistency. *Gormley v. Vartian* and *Atlantic Paint & Coatings, Inc. v. Conti*, both *supra*.

The trial justice in this case properly admitted defendant's subsequent complaint against Rossi's estate and properly considered it together with other factors in assessing defendant's credibility. As we said in *Rhode Island Hospital Trust National Bank v. Israel*, 119 R.I. at 305–06, 377 A.2d at 344–45:

"An admission in a pleading in a separate, unrelated case * * * is only a quasi admission. It is 'not in any sense final or conclusive,' out is instead an inconsistency in a pleader's proof which a trial justice should consider along with other evidence and which he may, just as with that other evidence, credit or discredit. That is exactly what the trial justice did in this case * * *. [H]e was doing no more than performing what we have so often said is a trial justice's obligation—to consider the material evidence in a case and to pass on its weight." [Citations and emphasis omitted.]

The defendant argues generally that the trial justice overlooked or misconceived material evidence. It is well settled that the findings of a trial judge sitting without a jury are entitled to great weight and will not be disturbed on appeal unless it appears from the record that he or she was clearly wrong or overlooked or misconceived material evidence. *Lisi v. Marra,* R.I., 424 A.2d 1052, 1055 (1981); *Wickes v. Kofman,* 121 R.I. 698, 402 A.2d 591 (1979).

Furthermore, weighing the evidence and assessing the credibility of the witnesses are functions of the trial court and not of the appellate court. *Raheb v. Lemenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976); *Fournier v. Ward,* 111 R.I. 467, 306 A.2d 802 (1973). We do not find from the record in this case that the trial justice overlooked or misconceived material evidence. Accordingly, we shall not disturb her findings of fact or her judgment.

For the reasons stated, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

SHEA, J., did not participate.