**BROWNKO INTERNATIONAL, INC., Plaintiff,**

v.

**OGDEN STEEL COMPANY and Leonard J. Buck & Co., Inc., Defendants.**

**LEONARD J. BUCK & CO., INC., Plaintiff,**

v.

**AMERASIA INDUSTRIAL, INC., Brownko International, Inc., Morris Brown, Edward Rasko, Ogden Steel Company, Luria Brothers & Company, Inc., Ogden Metals, Inc., Ogden American Corporation, Ogden Corporation, Amsurco, Inc., and Nicholas Giordano, Defendants.**

**No. 77 Civ. 179–CSH.**

United States District Court, S.D. New York.

July 6, 1983.

Wachtell, Manheim & Grouf, New York City, for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Ogden.

Young, Rose & Millspaugh, Roseland, N.J., for defendant Buck.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The motions *in limine* addressed in the parties' most recent briefs are resolved as follows:

(I) *The Andec/Buck Arbitration Award.*

Buck wishes to place in evidence the Andec/Buck arbitration award rendered against Buck, the judgment entered thereon, and proof of Buck's payment. Buck contends as to the Amerasia/Brownko interests ("Brownko"), the award is binding upon them, so that they are "barred from relitigating the award of arbitrators." Reply brief at 3. As to Ogden, Buck contends that the award and evidence of payment, while not binding on Ogden, are "relevant to and admissible on the issue of Buck's damages." Main brief at 15.

There is no merit to Buck's contention that Brownko is bound in this litigation by the Andec/Buck arbitration award. The only authorities cited for the proposition is the New Jersey vouching-in statute, N.J. S.A. 12A:2–607(5)(a), and a New Jersey case which considered vouching-in procedures. *U.S. Wire & Cable Corp. v. Ascher Corp.*, 34 N.J. 121, 167 A.2d 633 (1961). They furnish no guidance in this case. The statute and the case contemplate that the vouched-in defendant does nothing in response to a timely demand. In those circumstances he is bound by the result. Nothing of the sort happened here.

What happened here is that Buck sent Brownko, under date of September 11, 1975, a written "Demand for Consolidation of Within Arbitration with Pending No. 1310 0847 75" before the American Arbitration Association ("AAA"). That identifying number refers to the arbitration demand made pursuant to AAA rules by Andec against Buck. Buck sought in its demand for consolidated arbitration damages against Brownko measured by "such sums as may be assessed against Buck" in the arbitration initiated by Andec. Buck regarded Brownko as required to arbitrate its claim by virtue of the arbitration clause contained in the Buck/Brownko contract, as well as by the provisions of the letter agreement dated June 27, 1974 between Buck, Brownko and Andec.

Brownko neither acquiesced in nor ignored Buck's demand for consolidated arbitration before the AAA. Instead, it commenced a proceeding pursuant to NYCPLR § 7503(b) in the New York State Supreme Court, to stay the arbitration demanded against it by Buck. The state court judge issued a temporary stay of arbitration. Buck then removed the proceeding to this Court, where it was assigned to Judge Pollock. 75 Civ. 4858–MJP.

At about the same time Brownko commenced an action in New York Supreme Court against Ogden, seeking a declaratory judgment *inter alia* that, if Brownko was held obligated to arbitrate with Buck, Ogden would be bound by any award rendered by the arbitrators in favor of Buck and against Brownko.

Thus procedural machinery had been set in motion which, if pressed to a conclusion, might have resulted in a consolidated arbitration before the AAA, with all parties concerned bound by the result. It is a pity that this did not transpire. This protracted litigation and its attendant uncertainties would have been avoided.

In point of fact, however, Buck saw fit not to press its claim for a consolidated arbitration with Brownko. On August 31, 1976, counsel for Brownko and Buck appeared before Judge Pollock and executed a consent stipulation which put an end to Buck's effort to compel consolidated arbitration. That order reads that it is:

> "ORDERED that the motion to stay attempted arbitration be and the same hereby is granted and arbitration is permanently stayed, by consent of the parties. This case is thus terminated."

While no further documentation is furnished in the motion papers in respect of Brownko's suit in state court against Ogden, presumably it was mooted by Buck's capitulation before Judge Pollock. In the absence of any further demand by Buck that Brownko participate in the Andec/Buck arbitration, that arbitration went forward between only those two parties. Andec ultimately received an award against Buck in the amount of $1,021,834.32.

■ In these circumstances, there is no basis in law or in equity to hold that Brownko is now bound in any way whatsoever by the Andec/Buck arbitration award. Buck tried to involve Brownko in those proceedings, but Brownko resisted, and eventually Buck consented to haul down its flag. To hold that Brownko is now bound by the results of the arbitration would make a mockery of the prior proceedings in the case, including Buck's informed consent to the permanent stay of the consolidated arbitration which Buck had demanded.

I come then to the second question under this general heading. That is what use, if any, may legitimately be made of the Andec/Buck arbitration award in this litigation, which will require a jury to sort out the relative rights and obligations as between Buck, Brownko, and Ogden.

■ I conclude that the amount of the arbitration award granted to Andec against Buck can play no legitimate part in the trial of this case. Nor can the judgment entered upon the award; nor can evidence of Buck's payment of the award. It logically follows that the arbitrators may not testify as to the manner in which disputes were resolved or the amount of the award calculated. Counsel will not be permitted to refer to the arbitration award, in opening or closing statements, or in questions. In short, the arbitration award will be redacted out of this litigation.

It is necessary to perform this evidentiary surgery in order to safeguard the integrity of the trial between the parties to this litigation. In its demand for arbitration against Buck, Andec put forward a claim based on fraud, arising out of allegedly fraudulent acts on the part of Buck representatives which are entirely independent of the wrong-doing Buck asserts against Brownko or Ogden. Andec also asserted a contract claim against Buck. Central to that claim was Andec's contention that Buck had failed for a number of months to provide Andec with a particular certificate of quality of the steel billets in question. In its demand for arbitration, Andec recited its contention "that Buck's failure to timely provide a proper PTL certificate for more than 5 months fully justified Andec's rejection of the steel." It was that rejection, followed by Andec's sale of the billets at a drastically low, distressed price, that quantified Andec's contract claim against Buck. On the fraud claim, Andec claimed additional and different amounts.

The arbitrators, after hearing extensive evidence and considering exhaustive briefs, delivered an award which, with simple dignity, awarded Andec $1,021,834.32, together with certain administrative expenses. The award recited that it was "in full settlement of all claims submitted to this Arbitration." No breakdown or analysis was given in respect of which claim or claims

had prevailed, or as to how this particular amount was calculated.

■ In these circumstances, I agree with Brownko and Ogden that the arbitration award is of no measurable probative value in respect of either the liability of Brownko and Ogden, or the amount of damages Buck may have sustained as a result of the wrongdoing of either of these other two parties. After hearing the evidence, the jury may well conclude that Brownko and/or Ogden were in breach of their contracts or guilty of fraud; but there is no rational basis for blaming either Brownko or Ogden for Buck's independent fraudulent acts (if such occurred), or for Buck's delays in dealing with Andec at the crucial times, in which Brownko and Ogden played no part. We cannot know from the form of the arbitrators award to what extent the arbitrators were influenced, in awarding this sum to Andec and against Buck, by the presence of factors for which Buck was responsible, but for which Brownko and/or Ogden could not be. In consequence, the award has no probative value in this litigation. Where a previous arbitration award is ambiguous in respect of what issues were decided, it necessarily has a limited value in subsequent litigation. That is so, even where that litigation is between the same parties who were involved in the arbitration. *Ufheil Construction Co. v. Town of New Windsor*, 478 F.Supp. 766 (S.D.N.Y. 1979), *aff'd mem.*, 636 F.2d 1204 (2d Cir. 1980) (prevailing party in arbitration not entitled to partial summary judgment as to liability against opposing party where from the award "it remains unclear which of plaintiff's arbitration claims were deemed valid by the arbitrators," *id.* at 769). *A fortiori* this is true in respect of parties such as Brownko and Ogden, who were not parties to the arbitration between Andec and Buck. *Cf. American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 678 (2d Cir.1974).

■ Buck proposes to resolve the ambiguity by calling the arbitrators as witnesses and asking them to explain their award. Brownko and Ogden object to this procedure. I reject it as contrary to a consistent line of authority.

■ It is, of course, well settled that an arbitrator cannot be examined for the purpose of impeaching his award. Ogden cites a number of cases for this proposition, including Judge Cannella's decision for this Court in *Reichman v. Creative Real Estate Consultants Inc.*, 476 F.Supp. 1276, 1286 (S.D.N.Y.1979). A case more recently cited by Ogden, *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940), may also be fairly characterized as an effort by a litigant to overturn the ruling of the fact-finder involved, the Secretary of Agriculture in that particular case. To these authorities, Buck responds that it seeks the arbitrators' testimony not to attack the Andec/Buck award, but simply to explain it. But Buck cites no appellate case recognizing that distinction or a comparable one, and sanctioning the testimony of an arbitrator.

On the contrary, *Fayerweather v. Ritch*, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904), militates against such a distinction. The issue in *Fayerweather* was not whether a prior ruling should be impeached, but whether the principle of *res judicata* applied in respect to litigations subsequent to a state trial judge's consideration of the rights of the parties in respect of a probated will. The issue turned upon whether or not the trial judge had given consideration to certain releases executed by interested parties. The trial judge was called as a witness in the subsequent litigation, and permitted to testify that in deciding the case he did not consider the question of the validity of the releases. 195 U.S. at 306, 25 S.Ct. at 67. The receipt of this testimony was roundly condemned by the Supreme Court:

"Tested by the rule thus laid down the testimony of the trial judge, given six years after the case had been disposed of, in respect to the matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule is not wholly applicable, for as the case was tried before a

single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts—matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision. Undoubtedly, when the pleadings are general, as in a case of the common counts, evidence may be given of the testimony which was introduced on the trial, for that may disclose what must have been considered and determined. And where the evidence is that testimony was offered at the prior trial upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of *res judicata* must fail." *Id.* at 306–07, 25 S.Ct. at 67–68.

Buck professes to find some comfort in the following general statement in *Fayerweather:*

"It is undoubtedly true that in some cases evidence may be introduced outside the record to show what particular question was tried and determined in the former suit. *Washington, Alexandria & Georgetown Steam-Packet Company v. Sickles,* 24 How. 333, 344 [16 L.Ed. 650]; *Packet Co. v. Sickles,* 5 Wall. 580, 592 [18 L.Ed. 550]; *Russell v. Place,* 94 U.S. 606, 608 [24 L.Ed. 214]." *Id.* at 306, 25 S.Ct. at 67.

But the discussion which immediately follows this observation demonstrates the particular kind of evidence which may be considered. The *Fayerweather* Court quotes from one of the cases cited in support of the general proposition:

" 'The evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration, and then the record furnishes the only proper proof of the verdict.' " *Ibid.*

Thus the Court in *Fayerweather* in no circumstances condones the testimony of the trial judge himself to explain his decision. And the Court's hostility to such an offer of proof is manifest from that portion of the *Fayerweather* opinion which I first quoted. It was there said that a prior judgment "ought never to be overthrown *or limited* by the oral testimony of a judge or juror of what he had in mind at the time of the decision." In the case at bar, Buck wishes to demonstrate by the arbitrators' testimony that their award should be accepted by the trial jurors as *limited* to a particular contract claim asserted by Andec against Buck, uninfluenced in any way by other contract theories or the fraud claim against Buck. There is no authority for such testimony. The only evidence *Fayerweather* countenances is evidence "of the testimony which was introduced on the trial"; *not* the judge's mental processes in response to that evidence.

*Fayerweather* was cited with approval in *United States v. Morgan, supra,* 313 U.S. at 422, 61 S.Ct. at 1004; and the Supreme Court has also made it clear that these evidentiary inhibitions apply to arbitrators. *Chicago, Burlington & Quincy Railway Company v. Babcock,* 204 U.S. 585, 593, 27 S.Ct. 326, 327, 51 L.Ed. 636 (1907).

Because it is not legitimately possible to resolve the ambiguity in the arbitration award, that ambiguity remains. As noted *supra,* the ambiguity robs the award of any probative value. Since that is so, the evidence is not relevant under Rule 401, Fed.R.Evid. Alternatively, any arguable relevance would be clearly outweighed by the factors militating against admissibility. Rule 403. Confusion of issues could clearly arise, the jury being led into the inappropriate function of relitigating the arbitration.

■ The rendition of the arbitration award is not sufficient *per se* to tip the balance against admissibility under Rule 403. To the extent that Buck seeks to

recover from Brownko and Ogden for its liability to Andec, Buck claims indemnity. It is generally held that a cause of action for indemnity does not arise until the indemnitee makes payment. In those circumstances, the finders of fact in the subsequent indemnity action must inevitably learn of the original payment which triggers the action. Obviously it cannot be said that knowledge of that original payment, without more, must be excluded "by the danger of unfair prejudice" as that phrase is used in the rule. What is fatal to the present offer of proof are the attendant ambiguities in the award. The primary evil under Rule 403 is not so much prejudice to Brownko or Ogden resulting from the fact of the award, but the uncertainty as to its *meaning* which is inherent in the circumstances. Any effort to resolve that uncertainty, even if we disregard the public policy declared in *Fayerweather* and its progeny, would result in "confusion of the issues," another factor militating against admissibility under Rule 403.

In that regard, I am entirely unpersuaded by Buck's contentions at oral argument that the uncertainty could be quickly and easily resolved by asking the arbitrators if Buck's "fraud" figured in their award, the testimony on the point being limited to a simple "yes" or "no." Assuming, against the odds in my view, that sophisticated arbitrators would be likely to give such terse testimony even on direct examination, Brownko and Ogden would certainly be entitled to explore a "no" answer on cross examination which would open up all the issues raised by the parties and argued by counsel, and the manner in which the arbitrators dealt with the facts and the arguments. And, to come full circle, it is simply not appropriate to receive such testimony from quasi-judicial officers.

■ To the extent that Buck faces difficulties in quantifying its claims against Brownko and Ogden, it is a problem in significant measure of its own devising. Buck dropped the effort to achieve a consolidated arbitration involving Brownko, which caused Brownko to cease its pursuit of Ogden within the context of the arbitration demanded by Andec of Buck. The courts have the power to compel consolidated arbitrations before a joint arbitration panel, even if one of the participants objects. See, *e.g., Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966, 974 (2d Cir.1975), in which Judge Medina observed that a primary benefit of consolidated arbitration was the avoidance of the "danger of conflicting findings ..." In addition, no reason appears why Buck could not have asked the arbitrators to state their award in the form of a special verdict. Having abandoned its pursuit of the benefits of consolidation, and having failed to request particularity in the award, Buck may now find itself in a less than wholly satisfactory situation. But the legitimate concerns of the other parties, the policy considerations, and the evidentiary rules to which I have referred necessitate this conclusion.

The motion *in limine* of Ogden and Brownko, insofar as it relates to the award of arbitrators and arbitrators' testimony, is granted.

This ruling with respect to the inadmissibility of the Andec/Buck arbitration award poses the question of how Buck is to quantify its claims against Brownko and Ogden. The parties do not fully address that issue in their briefs. Further submissions, in the light of this opinion, will probably be necessary. Brownko takes the position that, at least as to it, the proper measure of damages is found in U.C.C. § 2–714(2). Brownko brief at 2. That may be so as to Brownko, which sold the billets to Buck; but as Buck points out in its brief at 15 n. 13, as to Ogden its claim does not involve breach of warranty claims under the Code. Although for the reasons stated Buck may not prove the arbitration award and payments thereunder as the underpinnings for its claims against Brownko and Ogden, it must in fairness be entitled to demonstrate some financial deprivation, or else the jury will not understand why Buck seeks affirmative relief in its counterclaim.

Counsel are directed to address this issue further, within the context of the Court's present opinion, by briefs to be filed and

served within thirty (30) days of the date of this opinion.

(II) *The Submissions of Buck's Attorneys to the Andec Arbitrators.*

█ Ogden wishes to have certain representations and arguments made by Buck's attorneys in the Andec arbitration admitted against Buck. The specific example given is counsel's statement that in November 1974 "the price of billets plummeted." Such an assertion is said to be binding upon Buck in the present litigation either as an admission under Rule 801(d)(2)(C), Fed.R.Evid., or by virtue of the doctrine of judicial estoppel as articulated by New York cases.

I am cited to no authority holding that assertions in briefs of counsel constitute admissions of a party-opponent within the meaning of Rule 801. I am particularly skeptical of the proposition in circumstances such as those at bar, where the party seeking to take advantage of the "admission" was a stranger to the prior proceeding, and where the fact at issue (the market for a commodity) may readily be proved by independent sources. The case might be different if Ogden (and Brownko for that matter) had been parties to the proceeding in which counsel's declaration had been made, and if the declaration (presumably uttered by counsel with his client's approval) dealt with a subjective matter, such as the client's intent or state of mind. Neither circumstance is present here. Extending the concept of a Rule 801 admission to assertions of this nature in briefs of counsel is not required by the letter or spirit of the rule, and would open a veritable Pandora's box for pleaders. I am equally unpersuaded by Ogden's invocation of the judicial estoppel principle. The very cases Ogden cites point in a different direction.

This branch of the motion *in limine* is denied.

(III) *The Minutes of the November 19, 1974 Meeting of Andec's Board.*

█ On November 19, 1974 the Andec Board of Directors held a meeting which discussed, *inter alia,* the current status of Andec's dispute with Buck concerning the billets. The minutes state in translation, in part: "Given the substantial reduction in the international price of steel, it is not a good idea to accept Buck's billet [sic]." Buck's counsel tendered these minutes to the arbitrators for their consideration, claiming that they show that "the bottom has fallen out" of the market for billets. In these circumstances, Ogden offers the statement in the Andec minutes for the truth of the matter asserted, pursuant to Rule 801(d)(2)(B). It is said that in these circumstances, the minutes are an "adoptive admission" binding upon Buck.

There is no merit to Ogden's contention. The notes of the Advisory Committee on the Federal Evidentiary Rules reflect the purpose of this particular provision: "Under established principles an admission may be made by adopting or acquiescing in the statement of another." I agree with Buck that Buck did not call this particular reference in the Andec minutes to the arbitrators' attention for the purpose of "adopting or acquiescing in" the minutes' factual assertion with respect to the current market for billets. The clear purport of Buck's submission to the arbitrators was to suggest a motive on Andec's part for rejecting the billets. The evidentiary rule concerning admissions has nothing to do with this situation.

This portion of the motion *in limine* is denied.

(IV) *Documents Pre-existing Mid-June 1974.*

Ogden contends that "the deal was re-done in the weeks after mid-June," brief at 20, the reference being to the tripartite agreement entered into in that month in which, *inter alia,* Ogden agreed to take back unacceptable billets. In those circumstances, Ogden contends that all exhibits generated before that time should be excluded from the proof, together with evidence concerning them.

I cannot accept this proposition. Buck charges Brownko and Ogden with a joint conspiracy antedating the events of June, the latter being alleged by Buck as additional acts in furtherance of the conspiracy. Whether or not these charges are well founded is for the jury to decide. But it is clear that the jury will be in no position to make an intelligent decision on the issues if it is foreclosed from acquiring knowledge of the earlier events.

This portion of the motion *in limine* is denied.

## CONCLUSION

Evidence will be dealt with at trial in conformity with this opinion.

Counsel are directed to furnish further memoranda on the question posed under Point (I), *supra*, within the time limit therein specified.

Counsel are also directed to advise the Court by letter forthwith concerning their present estimates of the length of time of trial, having in mind these evidentiary rulings.

It is So Ordered.