DECISION
Before this Court are defendant Denise A./Denise Lombardi's (Lombardi) motion in limine to admit testimony and documentary evidence of a previous uninsured motorist arbitration and plaintiff Doreen A. Diaz's (Diaz) motion in limine to preclude evidence of uninsured motorist coverage, arbitration and award.
The instant actions arise from a rear-end collision of motor vehicles which occurred on May 16, 1996, on Branch Avenue, near the intersection of Charles Street, in the City of Providence (the intersection). Plaintiff Diaz and defendant-plaintiff Manuel Texeira (Texeira), who each had been operating an automobile easterly on Branch Avenue, stopped their respective vehicles in response to a traffic signal at the intersection; Texeira was behind Diaz. While driving easterly on Branch Avenue, Lombardi approached the Texeira vehicle from behind and "rear-ended" it. Lombardi has maintained that after she brought her automobile to a complete stop behind Texeira, a phantom fourth vehicle struck her automobile, thereby causing it to strike the Texeira vehicle. Texeira's automobile in turn struck the rear of the Diaz vehicle.
On August 29, 1996, Texeira and his passenger, Heather Mallozzi (Mallozzi) filed civil action #96-4656 naming Lombardi as a defendant.[1] On March 10, 1997, Diaz filed civil action #97-1175, naming Texeira and Lombardi as defendants. Each complaint alleges negligence against the respective defendant(s). The matters were consolidated for trial in September of 1999 and were reached for jury trial before this Court on February 8, 2000.
At the time of the collision, Diaz had uninsured motorist (UM) coverage through Farm Family Casualty Insurance Company (Farm Family). Texeira was uninsured, and Lombardi was insured through Allstate Insurance Company.
Pursuant to her insurance contract with Farm Family, Diaz made a claim for UM benefits, which eventually proceeded to arbitration. In that matter, Diaz was represented by Attorney Robyn Factor (Factor) of the law firm of Kirshenbaum 
Kirshenbaum (K K). In support of the claim for UM benefits, Factor submitted, inter alia, the deposition transcript of Lombardi to the arbitration panel. Although the arbitration hearing resulted in a favorable award for Diaz, the arbitration panel did not document any decision, findings of fact or judgment. Pursuant to the Farm Family contract, Diaz, for consideration of the awarded amount, executed a release which was witnessed by Factor (the release).[2] The language therein releases Farm Family for any claim by Diaz pursuant to her UM coverage by "reason of an accident with an uninsured automobile owned by an unknown individual and driven by an unknown individual at Providence, Rhode Island on or about May 16, 1996."[3] The UM award is subject to Farm Family's subrogation rights.
During the second day of trial of these matters before this Court, Lombardi's counsel, during cross examination of Diaz, attempted to demonstrate a prior inconsistent stance regarding a phantom fourth vehicle and causation. During cross examination, Ms. Diaz testified that she did not remember why she had attended the UM arbitration and that she had never made any statement regarding the existence of a fourth vehicle. This Court, concerned that the jury may hear inadmissible evidence, held a hearing. Lombardi, seeking to introduce statements made by Factor at the UM arbitration hearing and related documentary evidence, then called Factor as a witness. Out of the jury's presence, Factor testified that one of her contentions before the arbitration panel was the involvement of a fourth vehicle in the collision. Subsequently, this Court removed the matter from consideration of the jury.
Lombardi seeks to admit at trial evidence related to the UM arbitration. Diaz and Texeira object to the admission or consideration of any such evidence. Additionally, Texeira moves that, should this Court find the arguments of Factor are admissible at the trial of these consolidated actions, its case against Lombardi be severed. Counsel for Factor and K K also objects to Lombardi's motion.
 Motion in Limine
A motion in limine is widely viewed
"`as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.' Gendron v. Pawtucket Mutual Insurance Co., 409 A.2d 656, 659 (Me. 1979). Initially, the motion was used `to prevent an adversary from mentioning the existence of evidence so highly prejudicial to the moving party that a motion to strike or an instruction by the trial judge to disregard the offending matter could not undo the harm that had been done.' Id. at 660. As it has developed, it has become a tool for narrowing the issues at trial and enhancing the parties' preparation for trial. Despite this development, it seems clear that a motion in limine is not intended to be a dispositive motion. See id. at 660 n. 10. Rather, it has been used in this state primarily to `prevent the proponent of potentially prejudicial matter from displaying it to the jury * * * in any manner until the trial court has ruled upon its admissibility in the context of the trial itself.' State v. Fernandes, 526 A.2d 495, 500 (R.I. 1987) (quoting Lagenour v. State, 268 Ind. 441, 376 N.E.2d 475, 481 (Ind. 1978)); see also State v. Bennett, 122 R.I. 276, 286, 405 A.2d 1181, 1186 (1979)."
Ferguson v. Marshall Contractors, Inc., 745 A.2d 147, 150-51 (R.I. 2000). "It appears that the purpose of the motion in limine is to exclude specific evidence that would otherwise be inadmissible or unfairly prejudicial to a party at trial." Id. at 151. This Court is mindful that "the admission [or exclusion] of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." Graff v. Motta, 748 A.2d 249, 252 (R.I. 2000) (citation omitted).
According to her motion, Lombardi moves this Court to admit the following: "1) the [argument] of plaintiff's attorney [Factor] at a UM Arbitration that Ms. Diaz was present [sic] when a position contrary to her stance in the present litigation was taken; and 2) documentary evidence attesting to the fact that a panel of arbitrators awarded her over $14,000 for injuries caused by an unknown car driven by an unknown driver."[4]
Lombardi argues that oral contentions made by Factor during the arbitration hearing in Diaz's presence are admissible against Diaz as admissions of a party opponent under Rhode Island Rule of Evidence 801.[5] Lombardi essentially contends that Factor had the authority to act as an agent for Diaz and, in the course of exercising that authority, made statements that a phantom fourth vehicle caused the subject collision. Lombardi construes Factor's oral arguments as factual contentions that could be contained in a pleading and cites Rhode Island case law acknowledging "the general view that pleadings in prior cases are admissible against the party filing the pleading in a subsequent trial on the basis that such a pleading constitutes an admission by a party opponent."[6] Atlantic Paint Coatings, Inc. v. Conti, 119 R.I. 522, 529, 381 A.2d 1034, 1037-38 (R.I. 1977). Lombardi, arguing that Diaz via Factor maintained a contrary factual stance at the UM arbitration, dismisses the application of an exception to the above-stated Atlantic Paint rule to the instant matter, namely that the admission of pleadings utilizing inconsistent or alternative statements of claims or defenses would cause undue prejudice.[7] Alternatively, Lombardi argues that Factor admitted before this Court that at the UM arbitration she did "contend" that a fourth vehicle caused the damages. Therefore, Lombardi asserts that, despite the absence of a record of the arbitration, the Court can take judicial notice that Factor's "admission" is indicative of what occurred at the UM arbitration. Lombardi also urges this Court to take judicial notice of what occurred at the arbitration based on the language of the release.
Lombardi fails to specify on which subsection of Rule 801 she relies: however, her citations reference Federal Rule of Evidence 801(d)(2)(C) and (D). Rhode Island Rule of Evidence 801(d)(2)(C) provides for the admission against a party of a statement made by a person authorized by the party to make a statement concerning the subject. To some extent, our case law may support this rule. Halpern v. Pick, 522 A.2d 197, 198 (R.I. 1987) (quoting Visiglio v. Schoof, 82 R.I. 4, 7, 105 A.2d 470, 471 (1954) ("admitting into evidence offer of compromise containing admission of party defendant")); Eric D. Green, Rhode Island Evidence Manual, Rule 801(d)(2)(C), n. 3 (2000) (citing Visiglio v. Schoof, supra). Subsection (2)(D) of our Rule of Evidence 801(d) provides for the admission of a statement made by an agent or servant concerning a matter within the scope of his [or her] agency or employment, if made during the existence of the agency relationship. Rhode Island case law recognizes that "an attorney is an agent employed by a party to a case to manage the same for him [or her]. His [or her] contract of employment implies that the attorney is authorized to take such steps in representing his [or her] client as he [or she] may deem legal, proper and necessary, and his [or her] acts in that respect, in the absence of fraud, must be regarded as the acts of his client."[8] May v. Penn T.V. Furniture Co., Inc.,686 A.2d 95, 99 (R.I. 1996) (quoting Cohen v. Goldman, 85 R.I. 434, 438,132 A.2d 414, 416 (1957) ("client who engages an attorney to bring a lawsuit on his behalf will be bound by a settlement entered into by that attorney despite the attorney's lack of actual authority to settle the case")). Accordingly, Diaz's argument that Factor was not acting as an agent for Diaz at the arbitration hearing is not persuasive.
During cross examination before this Court, Diaz testified that she did not remember why she attended the UM arbitration and that she had never made any statement regarding the existence of a fourth vehicle.[9] Regarding the subject motion, this Court is not cited to, nor aware of any authority holding that contentions of an opponent's counsel at a previous first-party UM arbitration constitute an admission of a party opponent within the meaning of our Rule of Evidence 801. Even if the above-cited Rules of Evidence allow that a statement emanating from a party's attorney are legally attributable to the party as an admission of a party opponent, the precise issue before this Court is whether defendant Lombardi, a stranger to plaintiff Diaz's first party UM arbitration, may introduce the proffered evidence in a trial on the issue of the Lombardi's and others' negligence, particularly where the arbitration award is subject to Farm Family's subrogation rights.
The issue argued orally by Factor at the UM arbitration was the extent of the damages sustained by Diaz when her vehicle was struck by (an) uninsured vehicle(s). Unlike at the arbitration hearing, the issue to be litigated before this Court is the extent, if any, of Texeira's and/or Lombardi's responsibility for the damages sustained by Diaz.[10] Further, an admission is a voluntary acknowledgment of the existence of a fact which is relevant to an adversary's cause." Black's Law Dictionary, at 48 (7th ed. 1999).
This Court is not persuaded that one of the contentions contained in Factor's oral argument which occurred at an UM arbitration hearing for which there is no record, findings of facts or judgment constitutes more than an alternative claim. Nor is this Court persuaded that those unsworn statements are an admission, or an admission of a party opponent that should be admitted to benefit a stranger to the arbitration.[11] The panel might have relied on Lombardi's deposition. Further, in this Court's opinion, judicial notice is inapplicable because the proffered contention does not consist of facts generally known with certainty by all reasonably intelligent people in the community or consist of facts capable of accurate and ready determination by resort to sources of indisputable accuracy. See Colonial Plumbing and Heating Supply Co., 464 A.2d 741, 742 (R.I. 1983) (citing McCormick's Handbook of the Law of Evidence § 329-30 (2d ed. Cleary 1972)).
Regarding admission of the release, Lombardi contends that it is evidence of Diaz's inconsistent factual position and proves that Diaz recovered by "reason of an accident with an uninsured automobile owned by an unknown individual and driven by an unknown individual."[12] Lombardi argues that the arbitration panel did not place any blame for the accident on known drivers such as Texeira and Lombardi. It can be fairly presumed, Lombardi contends, that the sole thrust of the plaintiff's argument at the UM arbitration hearing was that an unknown fourth vehicle caused her injuries. Lombardi bolsters the argument by asserting that Factor submitted Lombardi's deposition to the arbitration panel in support of Diaz's claim. Lombardi further contends that even if the statement in the release were merely Farm Family's understanding of what had occurred, it would still be admissible to the jury because Farm Family is pursuing its subrogation rights.
Recently, in Votolato v. Merandi, the Rhode Island Supreme Court, referencing Rule of Evidence 408, held that a settlement agreement between plaintiff and the insurance carrier of the driver of a vehicle in which plaintiff was a passenger was inadmissible for purposes of setoff or impeachment at a subsequent trial between the plaintiff and a remaining tortfeasor. 747 A.2d 455 (R.I. 2000). Therein, the Court reiterated the well-settled rule that evidence of a settlement reached between a plaintiff and a third party tortfeasor is inadmissible.[13] Id. at 461. After acknowledging that evidence of settlements may be admissible on issues other than damages and declining to apply an automatic rule of exclusion, the Court stated that "unless evidence of a settlement is relevant to some issue, other than the quantum of damages, a trial justice is instructed to bar the admission of such evidence and subsequently make the appropriate reduction in any jury award rendered in favor of the plaintiff." Id. at 462. Continuing, the Court cautioned that the "admission of settlement evidence for non-damage issues continues to be guided by the calculus of [our] Rule [of Evidence] 403."[14] Id. Next, the Court, addressing whether Rule 408 permits the introduction of settlement evidence for impeachment, noted that efforts to demonstrate liability or the litigiousness of the plaintiff, via the settlement evidence, were irrelevant to the issues in the case and were likely to prejudice the jury against the plaintiff. Specifically, the Court stated that evidence concerning the apportionment of fault among tortfeasors by way of settlement agreements introduced at trial is specifically proscribed by Rule 408 and is also supported by our case law. Id.
The Court then analogized to our collateral source doctrine which mandates that "evidence of payments made to an injured party from sources independent of a tortfeasor are inadmissible and shall not diminish the tortfeasor's liability to the plaintiff." Id. "The rationale of this rule is that the injured person is entitled to be made whole, since it is of no concern of the tortfeasor that someone else completely unconnected with the tortfeasor has aided his victim * * * [.]" Id. (citation omitted). The Court concluded that the settlement agreement could not have been properly admitted for impeachment purposes or to show bias. Id. The Court further noted that the agreement could have reasonably tended to show that the plaintiff had a litigious disposition and therefore was precisely the type of character evidence Rule 404(b) was designed to exclude. Id. (citation omitted). Accordingly, in Votolato the settlement evidence was inadmissible. Id.
This Court, having considered the Votolato analysis, believes that admission of any documentary evidence of the UM arbitration during trial of this matter would improperly influence the factfinder's determination of causation and/or reflect upon Diaz's character.[15] Further, this Court is firmly convinced that the probative value, if any, of the proffered evidence of the UM arbitration, is substantially outweighed by the danger of unfair prejudice to the plaintiff and Texeira. Additionally, there is significant risk of confusion of the issues. Accordingly, evidence of the UM arbitration is inadmissible.
After careful consideration of counsels' arguments, Lombardi's motion in limine is denied, and Diaz's motion is granted. Counsel for Diaz shall submit an appropriate order for entry in accordance herewith.
[1] Texeira and Mallozzi have presented a united opposition to the subject motion. Therefore, in this decision, their opposition is referred to as "Texeira."
[2] Said release provides, in relevant part:
"Received of Farm Family Casualty Insurance Company the sum of Fifteen Thousand Six Hundred Forty ($15,640.00) Dollars in full satisfaction, release and discharge of all claims and demands I ever had, now have, or may have against the said Company under coverage providing benefits on account of bodily injury or death caused by uninsured automobiles of policy no. 3805P026901 arising or to arise from, or by reason of an accident with an uninsured automobile owned by an unknown individual and driven by an unknown individual at Providence, Rhode Island on or about May 16, 1996."
[3] See Release Under Policy.
[4] See Defendant Denise Lombardi's Motion in Limine to Admit Testimony and Documentary Evidence of Previous Uninsured Motorist Arbitration.
[5] In support of her arguments, Lombardi cites several federal cases and treatises. E.g., Williams v. Union Carbide,790 F.2d 552 (6th Cir. 1986), cert. denied, 479 U.S. 992, 107 S.Ct. 591, 93 L.Ed.2d 592 (1986) ("statements by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney"); Hanson v. Waller, 888 F.2d 806 (11th Cir. 1989) (FRE 801(d)(2)(C) "has been applied to allow in evidence of statements made by attorneys in their representational capacity. Although an attorney does not have authority to make an out-of-court admission for this client in all instances, he does have authority to make admissions which are directly related to the management of litigation;" letter properly admitted); United States v. Martin, 773 F.2d 579 (4th Cir. 1985) (attorney's statement regarding his client's income which was made to an IRS auditor during the attorney's course of representation pursuant to a power of attorney was admissible in subsequent prosecution for evasion of taxes); United States v. Flores, 679 F.2d 173 (1982), cert. denied, 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983) (administrative claim letter sent by defendant's attorney to allege illegal search was admissible in subsequent criminal trial as admission of illegal possession of guns where letter was voluntarily mailed by defendant and his attorney).
[6] It is well-settled that "[p]leadings in a prior case may be admitted against the filing party in a subsequent trial on the basis that such pleadings constituted an admission by a party- opponent." DeChristofaro v. Machala, 685 A.2d 258, 265 (R.I. 1996) (citing Atlantic Paint Coatings, Inc. v. Conti,119 R.I. 522, 528-29, 381 A.2d 1034, 1037 (1977). See also Bengston v. Hines, 457 A.2d 247 (R.I. 1983) (a pleading in a separate cause of action "may be treated like any other admission or inconsistent statement for purposes of impeaching credibility"). "`[A] party who asserts contradictory claims in separate and distinct civil actions assumes the risk that those inconsistencies may be used to impeach the individual's credibility.'" DeChristofaro at 265 (quoting Cannone v. New England Telephone Telegraph Co., 471 A.2d 211, 213 (R.I. 1984) (upholding denial of motion in limine to bar opponent from introducing facts, via cross examination, concerning party's prior suit wherein party had asserted contradictory claim).
[7] See Atlantic Paint Coatings, Inc., 119 R.I. at 529, 381 A.2d at 1037-38 (R.I. 1977).
[8] See, e.g., 2 McCormick on Evidence § 259 at 154-55 (5th ed. 1999):
"If an attorney is employed to manage a party's conduct of a lawsuit, the attorney has prima facie authority to make relevant judicial admissions by pleadings, by oral or written stipulations, or by formal opening statement, which unless allowed to be withdrawn are conclusive in the case. Such formal and conclusive admissions, which are usually framed with care and circumspection, are sometimes contrasted with an attorney's oral out-of-court statement, which have been characterized as `merely a loose conversation.' . . . More recent cases generally measure the authority of the attorney to make out-of-court admissions by the same tests of express or implied authority as would be applied to other agents, and when they meet these tests, admit them as evidentiary admissions. These admissions occur, for example, in letters or oral conversations made in the course of efforts for the collection or resistance of claims, or settlement negotiations, or the management of any business in behalf of the client."
[9] Generally, "a non-defendant witness may not be impeached by extrinsic evidence on a collateral issue, and the cross-examiner is limited to the answers provided by the witness sought to be impeached." State v. Walsh, 731 A.2d 696, 698 (R.I. 1999) (citations omitted). Further, the scope of cross-examination is a matter squarely within the trial justice's discretion. Id.
[10] See Cole v. Charron, 477 A.2d 959 (R.I. 1984) (where a plaintiff's car was struck by an identified driver and a phantom motorist, and where plaintiff submitted to UM arbitration regarding phantom vehicle, plaintiff was not collaterally estopped from bringing suit against an identified second tortfeasor).
[11] In Brownko International, Inc. v. Ogden Steel Co., a party [Ogden] which was not involved in an arbitration wished to have certain representations and arguments made by an opponent's [Buck's] counsel in the arbitration admitted against the opponent [Buck] in subsequent litigation either as an admission under FRE 801(d)(2)(C) or by the doctrine of judicial estoppel as articulated by New York cases. 585 F. Supp. 1432, 1438 (1983). In Brownko, the Court, reasoning as follows, was not persuaded to admit the representations and arguments under Rule 801(d)(2)(C):
"I am cited to no authority holding that assertions in briefs of counsel constitute admissions of a party opponent within the meaning of Rule 801. I am particularly skeptical of the proposition in circumstances such as those at bar, where the party seeking to take advantage of the "admission" was a stranger to the prior proceeding, and where the fact at issue (the market for a commodity) may be readily proved by independent sources. The case might be different if Ogden (and Brownko for that matter) had been parties to the proceeding in which counsel's declaration had been made, and if the declaration presumably uttered by counsel (with his client's approval) dealt with a subjective matter, such as client's intent or state of mind. Neither circumstance is present here. Extending the concept of a Rule 801 admission to assertions of this nature in briefs of counsel is not required by the letter or spirit of the rule, and would open a veritable Pandora's box for pleaders." Id.
[12] See Release Under Policy.
[13] Also, "Rhode Island courts have adopted a consistently unsympathetic position toward parties who seek to take gratuitous advantage of agreements in which they took no part." Marr Scaffolding Co., Inc. v. Fairground Forms, Inc., 682 A.2d 455, 459 (R.I. 1996) (quoting McInnis v. Harley-Davidson Motor Co.,625 F. Supp. 943, 952 (D.R.I. 1986).
[14] Rhode Island Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[15] Lombardi argues that the "inconsistent factual scenarios" of what caused the plaintiff's injuries go to the heart of proximate causation and also that the jury ought to be able to ponder whether "Diaz will say anything to recover money." D. Suppl. Memo at 1, 3.