[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
I
TRAVEL OF CASE
The complaint in this case was originally filed by Elizabeth Bogosian on March 19, 1987 against Thomas A. Lynch and Marc A. Greenfield. Miss Bogosian will hereinafter be noted as theplaintiff and Messrs. Lynch and Greenfield as the defendants.
In her complaint, the plaintiff sought specific performance of a purchase and sale agreement with the defendants for three condominium units, consisting of three floors, in the defendants' building at 32 Custom House Street in Providence. That purchase and sale agreement executed on January 17, 1987, was made subject to satisfactory review of the proposed Declaration of Condominium documents by the plaintiff. The time for delivery of the deed, and payment of the purchase price was fixed in the agreement as February 27, 1987, but after dispute arose regarding the contents of the Declaration of Condominium documents, that closing date was extended to March 13, 1987. Without reviewing all of the disputed allegations, suffice it to note for purposes here that the plaintiff believed that the January 17, 1987 agreement was to permit her to purchase three out of the five condominium units that were planned for 32 Custom House Street and which would permit her to have a controlling interest in the building. The Declaration of Condominium documents forwarded to her thereafter provided however for a sixth floor in the building and other claimed variations from her understanding of the agreement. Accordingly, she rejected the document and requested the defendants on March 4, 1987 to amend or change the Declaration of Condominium documents. They refused. The plaintiff thereafter sensing the impasse, wrote to the defendants and informed them that she would purchase the three units in accordance with her understanding of the January 17, 1987 agreement and was ready to pay them the $765,000.00 balance due after her deposit of $10,000.00 for the total purchase price of $775,000.00. To protect her position, she recorded the agreement in the land records office for the City of Providence on March 5, 1987 and notified the defendants of the recording, and also of her continued intention to purchase the three units. Negotiations between the parties to resolve their differences were fruitless, and on March 19, 1987, plaintiff filed her complaint in this Court wherein she sought specific performance of the agreement. On that date, she also recorded her notice of lis pendens in the Providence land records office.
The defendants responded to the plaintiff's complaint and with their answer thereto, also filed counterclaims against the plaintiff claiming breach of contract; slander of title; interference with prospective economic advantage and interference with protected property interests. The defendants in their counterclaims sought both compensatory and punitive damages. They claimed a jury trial.
During the course of the awaiting trial procedures on April 27, 1987 the defendants filed a motion for partial summary judgment on Count 3 in the plaintiff's complaint which concerned the existence and viability of the purchase and sale agreement giving rise to the plaintiff's action. The defendants' motion for partial summary judgment was heard by Miss Justice Grande on June 12, 1987, and she thereafter entered decision thereon wherein she found that the January 17, 1987 purchase and sale agreement "was null and void" and that the plaintiff had acquired no interest or estate in the property at 32 Custom House Street by virtue of the void agreement. Judge Grande in her Order also required the plaintiff to discharge and release the recorded agreement and notice of lis pendens. From that order, the plaintiff filed an appeal to the Supreme Court and, on December 17, 1990 that appeal was denied and dismissed by Order of the Supreme Court (SupremeCourt Appeal No. 87-376). Ten days later, on December 27, 1987, the recorded agreement and notice of lis pendens were released and discharged.
The case, following the Supreme Court's order, was remanded to this Court for further proceedings on the defendants' counterclaims. The matter was reached for trial and at that time, counsel withdrew their claim for jury trial, and the case was heard by the Court sitting without a jury. At the conclusion thereof, counsel requested time within which to file post-trial memorandum and decision was accordingly reserved. Memorandum has been filed and considered and decision is herein entered.
II
THE DEFENDANTS' COUNTERCLAIMS
The defendants in their counterclaims against the plaintiff seek both compensatory as well as punitive damages. As to their counterclaim asserting a breach of contract, summary disposition thereof can be readily made because by virtue of Judge Grande's earlier ruling, and its approval by Order of the Supreme Court, there was no contract between the parties that could have been breached.
The remaining three counterclaims are next considered. Taking first the defendants' counterclaim alleging slander of title, and their request for damages arising therefrom. The defendants contend that their claim for slander of title does not rest upon any alleged breach of the January 17, 1978 purchase and sale agreement, or on the basis of any loss of sale to any subsequent thereto prospective buyer for the property, but instead, "uponthe chilling effect" the plaintiff's recording of the agreement and notice of lis pendens had upon the title to their property. (Defendants' post-trial memorandum, p. 8-9). In that context, it was the defendants' burden to prove what they alleged, namely the loss, if any they sustained as a proximate result of the plaintiff's alleged malicious actions and recordings.
A review of the trial evidence and exhibits, including the deposition testimony discloses that the defendants purchased the building at 32 Custom House Street in the downtown Providence commercial area in 1986 and thereafter attempted, without success, to lease any portions thereof. According to the testimony of Thomas A. Lynch, one of the defendants, they then decided to either sell or convert the building into condominium units pursuant to the Rhode Island Condominium Act, § 34-36.1,et seq., in hopes of quickly disposing of it, along with their extremely large purchase money mortgage obligation and personal loan obligations taken out to purchase the building. Accordingly, in early January, 1987 they listed the property for sale with the Henry W. Cooke agency, and shortly thereafter, the plaintiff expressed interest in the condominium proposal offered her and the ill fated agreement of January 17, 1987 was entered into. The evidence discloses her to be the one and only bona fide prospective purchaser they ever had for the building until Liberty Tree Associates came into the scenario.
In the defendants' brief presentation of evidence in support of their counterclaims they have failed completely to prove by the fair preponderance thereof that they were in any way damaged by the plaintiff's litigation and recording of the purchase and sale agreement or the lis pendens notice. They admit that they have no evidence of the loss of any prospective buyer for the property, and in fact, when they did, for the first time, find a buyer for the building, the sales price of $1,400,000.00 from that buyer, Liberty Tree Associates (Gunning LaFazia Gnys) represented a $210,357.00 increase over what the fair market value of the entire building was in March 1987, when the plaintiff's recordings took place. (Testimony, Karl W. Olsen). Nonetheless, the defendants urge the Court to presume and assume that somewhere out in the world of prospective buyers there were indeed prospective buyers who were frightened away by the recorded agreement and lis pendens, and accordingly the defendants are entitled to damages, at least in the amount of what they spent in maintaining the building during the period of time covered by the litigation, and until Liberty Tree Associates contracted to take title to the property, which would have been December 31, 1987. There is no evidence that the purchase and sale agreement with Liberty Tree Associates was in any way delayed or affected by the recorded lis pendens.
A review of the trial evidence, including the deposition exhibits which were entered by stipulation of the parties, fails to establish what the defendants were required to prove. As for the testimonial evidence, the Court finds that each of the trial witnesses Thomas A. Lynch; Joseph Montalbano and Karl W. Olsen testified truthfully and candidly. It finds as credible the deposition testimony of Thomas Sweeney and Peter Scotti (Exhibits 23 and 24). From all of the trial testimony and the exhibit evidence, this Court finds that the defendants have failed to carry and meet their burden of proof on the material issues of fact required to be proven by them with regard to their counterclaim based on an alleged slander of title. The defendants were required to prove that the plaintiff acted with malice when she recorded the purchase and sale agreement and the notice of lis pendens, and were required to prove that as a proximate result of that malicious action, they were damaged.
This Court finds from all of the evidence before it that at the time the plaintiff commenced her action for specific performance, and recorded the agreement and notice of lis pendens, in March 1987, that she did so in good faith reliance upon her understanding of the January 17, 1987 purchase and sale agreement. Notwithstanding, and accepting Judge Grande's earlier finding that the plaintiff uttered or published a false statement by her recordings, the defendants here in this trial failed completely to prove that her actions were motivated by any malice. The defendants' evidence fails to establish by the fair preponderance thereof that the plaintiff at any time acted with the required malice that would support a claim for slander of title and damages. Peckham v. Hirschfeld, 570 A.2d 663 (1990);Hopkins v. Drowne, 21 R.I. 20, 25 (1898). The facts in this case do not fit in whatsoever with the facts in the DeLeo v.Anthony A. Nunes, Inc. case, 546 A.2d 1344 (1988) or theIndustrial National Bank v. Searles case, 442 A.2d 436, 439-440 (1982). The defendants have also failed to prove, by the fair preponderance of the evidence, any damages which they can show proximately resulted from the alleged malicious recording of the agreement and/or notice of lis pendens. Damages cannot be predicated upon guess or speculation or upon conjectural inference. They owned a building that they could not lease or sell prior to the plaintiff ever entering upon the scene. From the evidence in this case, she was the only person who ever expressed any real interest in the building. The defendants urge this Court to conclude satisfaction of their burden of proof by inferring that but for the plaintiff's recordings in the land record office, they would have sold their building to some unknown buyer and would thereby have avoided the necessity of maintaining their building from March 1987 through December 31, 1987. All that they may have shown is that they were perhaps inconvenienced by the plaintiff's litigation and recordings, but as the law provides, mere inconvenience is insufficient to establish a cause of action or prove damages. Federal Auto BodyWorks, Inc. v. Aetna Casualty and Surety Co., 447 A.2d 377, 380 (1982).
As to their claim for punitive damages, this Court's earlier finding that the plaintiff did not act maliciously effectively precludes such an award. Peckham v. Hirschfeld, 570 A.2d 663, 669 (1990); Sherman v. McDermott, 114 R.I. 107, 108-109 (1974). The defendants' reliance upon the "impaired vendability" theory as a special damage for which damages should be awarded is not applicable on the scant and unique evidence in this case. The defendants misread Chapter 24, Restatement of Torts. They neglect to note therein at page 972 the following:
 "It is probably still the law everywhere that he must either offer the names of those who have failed to purchase or explain why it is impossible for him to do so but where he cannot, the matter is dealt with by analogy to the proof of lost profits resulting from breach of contract."
In this case, there was no loss, only a gain.
As pertains to the defendants' 3rd and 4th counterclaims, which concern in essence a claim for damages based upon an alleged interference with prospective economic advantage theory, this Court notes the distinction between the tortious contractual interference, recognized in Smith Development Corp. v. BilowEnterprises, Inc., 112 R.I. 203, 211 (1973) where there existsa contract to be interfered with, and in Mesolella v. City ofProvidence, 508 A.2d 661, 669 (1986) where an expectedcontractual relationship is shown to be a reasonable probability. In the latter case, that reasonably anticipated contractual relationship would suffice, provided there is also shown a then present knowledge of that expected relationship on the part of the plaintiff here, and then, an intentional act of interference by her, with that expected relationship. Inaddition, there must be proof that the interference caused thedamages, and, the amount of damages. Mesolella, supra, 669.
While malice in the sense of spite or ill will is not
required to be proven in this case by the defendants on their3rd and 4th counterclaims, "legal malice", which is an intent to do harm without justification is still required. If "legal malice" had been proven by the defendants, then of course, the burden of proving justification therefor would have been on the plaintiff. Mesolella, supra, 620. On the basis of the evidence presented by the defendants in this case, they have failed to prove any intent to do harm without justification on the part of the plaintiff, and there is no credible probative evidence in the record from which a reasonable inference thereof can be drawn by the Court.
In this case, on the evidence presented with regard to the 3rd and 4th counterclaims the Court finds that legal malice on the part of the plaintiff has not been proven, and, in addition, defendants have admitted that they could offer no evidence of any expected buy and sell contractual relationship with regard to the 32 Custom House Street property. The mere recording by the plaintiff of the January 17, 1987 purchase and sale agreement and the notice of lis pendens in March of 1987, which admittedly, as testified to by Anthony Montalbano made the property unmarketable, absent any evidence of any expected buyer for the property, and absent evidence of any legal malice on the part of the plaintiff in her actions does not entitle the defendants to prevail on those counterclaims. Izen v. Winoker, 589 A.2d 824, 829 (1991).
For the reasons hereinabove set out, the Court finds that the defendants have failed to meet and carry their required burden of proof, on the basis of the fair preponderance of the evidence presented with regard to each and all of their four counterclaims.
Decision for the plaintiff is accordingly entered.
Counsel shall prepare and submit for entry the appropriate Judgment in accordance with the Court's decision.